**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATALIE T. HSIEH, <u>et al</u>., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No:  06CV1218 (CKK) |
| CONSOLIDATED ENGINEERING | ) | |
| SERVICES, INC., <u>et al</u>., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIRD PARTY DEFENDANT UNITED STATES OF AMERICA'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Third Party Defendant United States moves to dismiss the claim asserted against it by

Consolidated Engineering Service, Inc. ("CESI"), under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 2672 and 1331, pursuant to the Federal Rules of Civil Procedure 12(b)(1) on the

grounds that the FTCA does not waive sovereign immunity for tortious conduct allegedly

committed by an independent contractor.  Similarly, the United States moves to dismiss the third

party complaint pursuant to Rule 12(b)(6) for failure to state a claim because the contract

between the United States and CESI expressly states that the United States "shall be indemnified

and saved harmless against claims for damages and/or injuries" occasioned through the

performance of any service or the use, maintenance and operation of equipment and vehicles by

the contractors' employees or agents.

Additionally, the United States moves for summary judgment of the claims asserted

against it by Plaintiffs under the FTCA, pursuant to Fed. R. Civ. P. 56, on the grounds that

Plaintiffs have failed to demonstrate that the United States had either actual or constructive

notice of a potential hazard.

A Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, a Statement of Material Facts As To Which There Is No Genuine Issue, and a proposed Order are submitted herewith.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, DC BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATALIE T. HSIEH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No:  06CV1218 (CKK) |
| | ) | |
| CONSOLIDATED ENGINEERING | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANT UNITED STATES OF AMERICA'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

1.  The General Services Administration ("GSA") awarded a contract to Day and Zimmermann, Inc. ("D&Z") on January 22, 2002, to perform "inspections, preventive maintenance, repairs, and general housekeeping for the entire Heating Operation and Transmission District ("HOTD") Steam Distribution Complex ("SDC") located in Washington, DC."  See Exhibit 1 (Base Award).

2.  On or about July 9, 2004, GSA, D&Z, and Consolidated Engineering Services, Inc. ("CESI") entered into a novation agreement in which CESI agreed to be bound by and to perform the contract in accordance with the conditions contained in the contracts.  CESI also assumed all obligations and liabilities of, and all claims against, D&Z.  CESI ratified all previous actions taken by D&Z with respect to the contracts, with the same force and effect as if the action had been taken by CESI.  See Exhibit 2 (Novation Agreement).

3.      Effective on or about August 30, 2004, during the second option year of the

contract, in accordance with the novation agreement, CESI assumed performance

of the contract to provide "tours, inspections, basic operation, preventive

maintenance, minor repairs and replacements (  $1,000), and general

housekeeping" of the SDC.  See Exhibit 2 (Novation Agreement) and Exhibit 3

(Contract Option Year 2) ("Contract") at 22.

4.      The contract provides that CESI is responsible for the day-to-day inspections and

monitoring of all Contractor work.  See Exhibit 3 (Contract) at 35.

5.      The contract requires the contractor to provide a full-time project manager who

has the full responsibility for administering personnel, directing, work, and

interfacing with the Government.  See Exhibit 3 (Contract) at 22.

6.      GSA only has the right to inspect the work performed by CESI for the purpose of

determining if CESI is in compliance with its obligations under the contract.  See

Exhibit 3 (Contract) at 36.

7.      The contract provides that CESI is responsible for protecting the public from any

hazards that may result from its work, including steam and condensate discharges.

See Exhibit 3 (Contract) at 28.

8.      The contract provides that CESI assumes full liability and responsibility for all

losses and damages to property or injuries to persons occasioned through the

performance of any services or the use, maintenance and operation of equipment

used by the CESI.  See Exhibit 3 (Contract) at 47.

9.    The contract provides that the Government shall be indemnified and saved harmless against claims for damages and/or injuries.  <u>See</u> Exhibit 3 (Contract) at 47.

10.    The manhole involved in this incident is located at the corner of 10<u>th</u> Street and Pennsylvania Avenue, N.W., and is known as Manhole 42.  <u>See</u> Third Party Complaint ¶ 8(a).

11.    CESI employees were in Manhole 42 on September 7 and 9, 2004, and gave GSA no notice of a problem in the manhole.  <u>See</u> Exhibit 6 (September 7, 2004 field work order) ("FWO"); Exhibit 7 (September 9, 2004 FWO);<u>1</u>/ Exhibit 5 (Deposition of John Bright) ("Bright dep.") at 23-24.

12.    Manhole 42 did not have water infiltration problems that would have put GSA on notice of a potentially hazardous condition.  <u>See</u> Exhibit 4 (Deposition of Greg Westphal) ("Westphal dep.") at 19-20; Exhibit 5 (Bright dep.) at 30-31; 36:10-15).

13.    On September 11, 2004, Plaintiffs, Dr. Hsieh and his daughter, Natalie Hsieh, walked with a friend from the Spy Museum to the Hoover FBI Building, and stopped in front of the Hoover FBI Building to take a picture of a friend.  <u>See</u> Exhibit 8 (Deposition of Dr. Matthew Hsieh) ("Hsieh dep.") at 23:18-20; 25:10-11.

---

[1]  Defendants have assigned the date which reflects when the work was completed on the CESI field work orders and GSA work orders, rather then when the work orders were issued.

14.    Dr. Hsieh pushed Natalie Hsieh, who was traveling in a stroller, over the steam grate outside the Hoover FBI Building at Manhole 42.  <u>See</u> Exhibit 8 (Hsieh dep.) at 38:13-22; 39:1-5; Third Party Complaint ¶ 8(a).

15.    Mr. Harry Washington, a GSA Mechanical Engineer Technician Supervisor, received a call from the central heating plant with instructions to call the Hoover FBI Building.  <u>See</u> Exhibit 9 (Deposition of Harry Washington) ("Washington dep.") at 5:9-13; 24:12-19.

16.    Mr. Washington learned from someone at the Hoover FBI Building that a girl had gotten burned.  <u>See</u> Exhibit 9 (Washington dep.) at 25:2-5.

17.    Mr. Washington called Mr. Richard Matkins, CESI's project manager, and requested that Mr. Matkins go "check out" the manhole outside the Hoover FBI Building.  <u>See</u> Exhibit 10 (Deposition of Richard Matkins) ("Matkins dep.") at 51:8-15; 52:4-10.

18.    Mr. Matkins went to the site of Manhole 42 and called Mike Glock, CESI's general foreman, to request that he come to Manhole 42.  <u>See</u> Exhibit 10 (Matkins dep.) at 40:5; 53:10-16; and 54:2-5.

19.    Mr. Matkins put up a barrier around the manhole cover at Manhole 42.  <u>See</u> Exhibit 10 (Matkins dep.) at 54:4-5; Exhibit 9 (Washington dep.) at 27:16-20; 28:4-5, 15-17.

20.    Mr. Washington also went to Manhole 42 on September 11, 2004.  <u>See</u> Exhibit 9 (Washington dep.) at 27:16-18

21.     Mr. Matkins waited at the site of Manhole 42 until Mike Glock and other CESI employees arrived at the scene with a pump truck.  <u>See</u> Exhibit 10 (Matkins dep.) at 59:11-21.

22.     Mike Glock and CESI employees pumped water out of Manhole 42 on September 11, 2004, after being notified by GSA of the steam emanating from the manhole. <u>See</u> Exhibit 10 (Matkins dep.) at 59:19-21; Exhibit 11 (September 11, 2004 FWO)

23.     GSA issued a work order to CESI to conduct the necessary repairs on September 11, 2004.  <u>See</u> Exhibit 12 (September 12, 2004 GSA Work Order).

24.     On Sunday, September 12, 2004, Joseph Lambright, a GSA Mechanical Engineer Technician, turned off the steam running to the equipment in Manhole 42.  <u>See</u> Exhibit 13 (Deposition of Joseph Lambright) ("Lambright dep.") at 6:2-7; 15:16-22; and 16:8-10.

25.     On Sunday, September 12, 2004, CESI's subcontractor, American Combustion Industries ("ACI") cut out and replaced a valve in Manhole 42.  <u>See</u> Exhibit 14 (ACI Invoice); and Exhibit 15 (Deposition of Ronald Welker, Jr) ("Welker dep.") at 8:18-20; 9:17-18; and 16:4-8.

26.     Mike Glock, a general foreman for CESI, was at the scene on September 12, 2004, giving instructions to the ACI employee.  <u>See</u> Exhibit 10 (Matkins depo) at 62:10-22; 63:1-2; Exhibit 15 (Welker dep.) at 10:16-22; and 29:17-19.

27.     After the valve was replaced, GSA employees reenergized the steam line.  <u>See</u> Exhibit 13 (Lambright dep.) at 60:4-11.

5

28.     GSA employees are not responsible for the day-to-day supervision of CESI

employees, nor do they perform management functions for CESI.  <u>See</u> Exhibit 9

(Washington dep.) at 60: 5-13; <u>see</u> Exhibit 4 (Westphal dep.) at 104: 14-17.

Date: September 7, 2007                          Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATALIE T. HSIEH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No: 06CV1218 (CKK) |
| | ) | |
| CONSOLIDATED ENGINEERING | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THIRD PARTY DEFENDANT UNITED STATES' MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT**

The third party complaint against the United States is a fundamentally flawed attempt by CESI to impose - - in total or in part - - liability on the United States for CESI's own alleged negligence, which caused injuries to Plaintiffs. CESI's efforts should be rejected for at least two reasons. First, because the injuries resulted from the acts or omissions of CESI, a government contractor, and not the actions of an employee of the United States, there is no waiver of sovereign immunity and this Court lacks jurisdiction to hear the claims. Second, even if this Court had jurisdiction to hear the claim, the contract between the United States and CESI expressly mandates that CESI indemnify and hold harmless the United States for the incident that caused injuries to Plaintiffs.

Importantly, dismissing the third party complaint against the United States will ***not*** leave Plaintiffs with no chance of recovery. The Plaintiffs have sued CESI directly. Accordingly, dismissing the third party complaint against the United States will have no effect on Plaintiffs' claims for direct liability against CESI.

Additionally, the United States moves for summary judgment against Plaintiffs' claims because CESI, an independent contractor, had the responsibility of maintaining and inspecting the Steam Distribution Complex ("SDC"), and the United States has not waived sovereign immunity under the FTCA for CESI's alleged negligent performance of the contract. Even assuming that the United States had a duty to warn Plaintiffs of a danger, that duty was fully and validly delegated to CESI. Lastly, Plaintiffs cannot show that the United States had actual or constructive notice of a hazard.

## FACTS

The GSA, National Capital Region, Heating Operations and Transmission Division ("HOTD") contracted with CESI to maintain and repair the SDC. See Exhibit 1 (Base Award) and Exhibit 2 (Novation Agreement). On September 11, 2004, Plaintiffs were allegedly on the corner of 10th Street and Pennsylvania Avenue, N.W., taking pictures of a friend outside of the Federal Bureau of Investigation ("FBI") Headquarters Building ("the Hoover Building"). The minor Plaintiff, Natalie Hsieh, was in her stroller being pushed by her father, Plaintiff Dr. Matthew Hsieh. (See Exhibit 8) (Deposition of Dr. Matthew Hsieh ("Hsieh Dep.") at 23:18-20; 25:10-11; 38:13-22; 39:1-5. Plaintiff Dr. Hsieh then walked along the sidewalk and pushed the stroller over the steam grate. See Exhibit 8 (Hsieh dep.) at 38:18-22; 39:1-5. The manhole at this location is known as Manhole 42. See Third Party Complaint ¶5. Plaintiffs allegedly suffered burns from the steam. See Exhibit 8 (Hsieh dep.) at 44:1-22; 45:1-5.

After the alleged incident, Mr. Harry Washington of GSA was notified, and immediately requested that Mr. Richard Matkins of CESI address the situation. See Exhibit 9 (Deposition of Harry Washington) ("Washington dep.") at 24:12-19 and Exhibit 10 (Deposition of Richard Matkins) ("Matkins dep.") at 51:8-15. CESI blocked off the area and pumped water out of the

2

manhole on September 11, 2004.  <u>See</u> Exhibit 10 (Matkins dep.) at 54:4-5; 59:19-21; and Exhibit 11 (Sept. 11, 2004 GSA Work Order).  GSA shut down the steam the following day, Sunday, September 12, 2004, to allow CESI to conduct the necessary repairs.  <u>See</u> Exhibit 13 (Deposition of Joseph Lambright) ("Lambright dep.") at 15:16-19.  CESI's subcontractor, American Combustion Industries ("ACI") cut out and replaced a valve in Manhole 42.  <u>See</u> Exhibit 14 (ACI Invoice) and Exhibit 15 (Deposition of Ronald Welker, Jr.) ("Welker dep.") at 8:18-21; and 9:17-18.

Prior to the alleged incident, GSA had no notice or indication that there was a potentially hazardous condition in Manhole 42 as it did not have recurring water infiltration issues.  <u>See</u> Exhibit 4 (Deposition of Greg Westphal) ("Westphal dep.") at 19-20; Exhibit 5 (Deposition of John Bright) ("Bright dep.") at 30-31; 36:10-15.  CESI had been working in the manhole the week before September 11, 2004, and they did not inform GSA of any problems.  <u>See</u> Exhibit 6 (Sept. 7, 2004 Field Work Order) ("Sept. 7, 2004 FWO") and Exhibit 7 (Sept. 9, 2004 FWO).

The United States was brought into this action, originally filed in the Superior Court of the District of Columbia, as a Third Party Defendant by the Defendant and Third Party Plaintiff, CESI.  The United States filed a motion to remove the case to the United States District Court for the District of Columbia, which was granted.  Thereafter, Plaintiff Natalie T. Hsieh, a Minor, by her Father and Next Friend, Matthew M. Hsieh, filed an Amended Complaint alleging that both CESI and the United States were negligent because they failed to "exercise[] the degree of care required of them in the circumstances presented in the maintenance and repair of the Steam Distribution Complex . . ."  <u>See</u> Amended Complaint at ¶ 15.  In their answer to Plaintiff's Amended Complaint, CESI also filed a cross claim against the United States seeking indemnification and/or contribution.  <u>See</u> CESI Answer to Amended Complaint at ¶¶ D, E.

3

Plaintiff then filed a Second Amended Complaint naming Matthew M. Hsieh as an individual

party plaintiff.

## ARGUMENT

### I.  12(b)(1) STANDARD

In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), a court may consider the complaint supplemented by undisputed facts evidences in the

record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts.  Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003);

Kuffel v. U.S. Bureau of Prison, 882 F. Supp. 1116, 1120 (D.C.C. 1995) ("The Court may go

beyond the pleadings and consider affidavits to determine whether subject matter jurisdiction

exists.").  Although a plaintiff's allegations receive favorable inferences at the motion to dismiss

stage, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of

the evidence.  American Farm Bureau v. Envtl. Prot. Agency, 121 F. Supp. 2d 84, 90 (D.D.C.

2000).

### A.    The Federal Tort Claims Act And The "Contractor" Exception

Subject matter jurisdiction has not been established against the United States because it

cannot be sued for the tortious acts of its contractors.  The United States, as sovereign, is

immune from suit except as it consents to be sued.  FDIC v. Meyer, 510 U.S. 471, 474 (1994);

United States v. Sherwood, 312 U.S. 584 (1971).  Through Congress, the United States may

define the terms and conditions upon which it may be sued.  Honda v. Clark, 386 U.S. 484, 501

(1967); Soriano v. United States, 352 U.S. 270 (1957).  In enacting the FTCA, Congress granted

a limited surrender of the sovereign immunity of the United States.  United States v. Orleans,

425 U.S. 807, 813 (1976).

The FTCA grants district courts jurisdiction over claims against the United States for damages for personal injury, property damage or death caused by the negligent or wrongful act or omission of a government employee acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred.  28 U.S.C. §1346(b). The FTCA was never intended, and has not been construed by the Supreme Court to reach outside this narrow waiver of immunity.  Cooper v. United States, 225 F.Supp.2d 1, 3 (D.D.C. 2002).  By its own terms, the FTCA waives the sovereign immunity of the United States only for claims resulting from the negligent or wrongful acts or omissions of federal agencies or "employees of the government."  28 U.S.C. §§1346(b) and 2671.  See Orleans, 425 U.S. at 814-15.  The FTCA does not waive liability for torts committed by contractors with the United States.  The FTCA, in fact, defines the terms "federal agency" and "employee" to exclude "any contractor with the United States."  28 U.S.C. §2671.

The issue of whether a contractor relationship exists, thereby barring liability under the FTCA, is a matter of federal law.  Orleans, 425 U.S. at 814.  The Supreme Court has ruled that one's status as an independent contractor depends on the ability of the United States "to control the detailed physical performance of the contractor," Logue v. United States, 412 U.S. 521, 528 (1971), and on "whether [the contractor's] day-to-day operations are supervised by the Federal government.  Orleans, 425 U.S. at 815.  See also, Cannon v. United States, 645 F.2d 1128, 1132-35 (D.C. Cir. 1981).

Although the United States may enter into a contract to obtain or ensure compliance with federal goals, that contractual relationship does not transform the acts of a contractor into the federal acts for which liability may be imposed against the United States under the FTCA.  See

5

Orleans, 425 U.S. at 815-16.  If that were not the case, the established concepts of the master and servant relationships would be distorted and federal liability under the FTCA would be extended beyond Congress' intended waiver of sovereign immunity.  Id. at 819.

Allegations that a contractor was required to comply with detailed regulations, specifications or standards in performing the work do not establish that the United States supervised the contractor's day-to-day operations or controlled the detailed physical performance of the contractor's work, and do not, standing alone, vitiate the contractor exclusion.  Logue, 412 U.S. at 529-30; Orleans, 425 U.S. at 817-18; Macharia v. United States, 335 F.3e 61 (D.C. Cir. 2003).  See also, Cooper, 225 F. Supp.2d at 4 ("[C]ourts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem the contractor an agent and its acts the acts of the United States.").  Absent a showing of day-to-day supervision or a right to control by the United States, the United States is not liable for the torts committed by the contractor or its employees.

**B.     The Accident At Issue Was The Result Of The Alleged Negligence Of A Government Contractor**

Here, the conduct of the United States, and its contract with CESI, do not meet the threshold criteria under Logue and Orleans for establishing FTCA liability for the acts or omissions of a government contractor.  GSA contracted with CESI to conduct inspections, tours, basic operations, and preventive maintenance of the SDC.  See Exhibit 3 Contract Option Year 2) ("Contract") at page 22.  Specifically, CESI was required to tour and inspect all portions of the Steam Distribution Complex and perform all required preventive maintenance on all items within the Steam Distribution Complex.  See id.  Under the contract, CESI was also responsible for the basic operation of equipment in the SDC.  See id. at page 23.

6

Additionally, CESI was charged with making all necessary incidental repairs and replacements as well as all necessary minor repairs and replacements ( $1,000) that are identified to be required . . . by the Contractor . . ." <u>See</u> <u>id.</u> at page 25.  The contract further provides that the "Contractor is responsible for the day-to-day inspection and monitoring of all Contractor work performed to ensure compliance with contract requirements." <u>See</u> <u>id.</u> at page 35.  Most importantly, CESI had a duty under the terms of the contract, to protect the "public from any hazards that may result from its work, including excavations, open tunnel access and manholes, noxious fumes, open flames, and steam and condensate discharges." <u>See</u> <u>id.</u> at page 28.

In this case, the United States did not control the detailed physical performance of CESI (or D&Z before them).  GSA employees were neither responsible for the day-to-day supervision of CESI employees, nor did they perform any management functions for CESI; these were the sole responsibility of the contractor.  <u>See</u> Exhibit 9 (Washington dep.) at 60:5-13; and Exhibit 4 (Westphal dep.) at 104:14-17.  No federal employee had day-to-day, direct control over the implementation of maintenance and repair work, or any other services performed under the contract.  Therefore, the United States cannot be liable for the tortious conduct, if any, of CESI. <u>See</u> <u>United States v. Orleans</u>, 245 U.S. at 815-816 ; <u>Logue v. United States</u>, 412 U.S. at 529-530; <u>Cannon v. United States</u>, 645 F.2d at 1139-40.

Further support for this position is found in <u>Cooper v. United States</u>, <u>supra</u>, 225 F. Supp.2d 1; there the Court granted the Government's motion for summary judgment holding that the United State had not waived its sovereign immunity in relation to an employee of an independent contractor performing work under a contract on a Government facility.  In <u>Cooper</u>,

7

the plaintiff was allegedly injured by two electrical shocks while working on Government owned kitchen equipment for which a contractor was responsible. Id. at 2, 4. Indeed, "courts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the United States." Id. at 4. Too, the Government's retention of the ability to inspect the contractors' work does not transform an independent contractor to an agent or servant of the Government. See, Jennings v. United States, 530 F.Supp. 40, 43 (D.D.C. 1981).

Here, CESI was responsible for touring, maintaining, and inspecting the SDC. Because CESI had the responsibility for the maintenance of the SDC at the time of the alleged injury, the Government has not waived its sovereign immunity under the FTCA and is not responsible for CESI's alleged negligent performance of its duty. While, the Government maintained its right to inspect CESI's work, it did not control the detailed physical performance of CESI or supervise CESI's employees. See Exhibit 9 (Washington dep.) at 60:5-13; and Exhibit 4 (Westphal dep.) 104:14-17. Therefore, the limited waiver of the Government's immunity under the FTCA does not encompass this claim. The Government's liability for torts is limited to those committed by employees of the Government while acting within the scope of their employment. The United States has no liability under the doctrine of respondeat superior where, as here, the alleged tortfeasor is not an employee of the Government, but rather a contractor, and the United States did not control the contractor's day-to-day operations.[2]

---

[2] Court's routinely decide the applicability of the independent contractor exclusion at the motion to dismiss stage. See, e.g., Hudert v. Alion Science & Tech Corp, 429 F.Supp.2d 99 (D.D.C. 2006) (granting United States' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)); Presley v. Commercial Moving & Riggins, Inc., No. 04-0014, __ F. Supp. 3d. __ (D.D.C. Mar. 29, 2005 (granting pre-discovery summary judgment to the United States on defendant's third party complaint on the basis of the government contractor exemption to the FTCA) (opinion

## II. 12(b)(6) STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and dismissal is appropriate where the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Browning v. Clinton, 292 F.3d 235, 241 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1975)); Bell Atlantic v. Twonbly, 1275 S.Ct. 1955, 1956 (2007) (A court should dismiss a complaint for failure to state a claim when the complaint fails "to raise a right to relief above the speculative level."). The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979), However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739 at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). In determining whether a complaint fails to state a claim, the Court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which it may take judicial notice. See E.E.O.C. v. St. Francis Exavier Parochial Sch., 117 f.3d 621, 624-625 (D.C. Cir. 1997). If the Court considers any other matters in deciding a Rule 12(b)(6) motion, the motion should be converted

---

attached at Exhibit 16); Cannon v. United States, 645 F.2d at 1130 (reversing district court's denial of government's pre-discovery motion to dismiss); W.C. & A.N. Miller Cos. v. U.S., 963 F. Supp. 1231 (deciding applicability of independent contractor exclusion on basis of government's motion to dismiss or for summary judgment).

into a motion for summary judgment and treated pursuant to Rule 56.  See Fed. R. Civ. P. 12(b).

## III.    THE THIRD PARTY COMPLAINT FAILS TO STATE A CLAIM AGAINST THE UNITED STATES

In its cross claim, CESI seeks indemnification or contribution from the United States if compelled to pay any sums to Plaintiff.  See Answer to Amended Complaint at ¶¶ D, E. However, under the contract between CESI and the Federal Defendant, CESI assumes full liability and responsibility for all losses and damages to property or injury to persons occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractors' employees or agents."  See Exhibit 3 (Contract) at page 47. Additionally, the contract clearly provides that "[t]he Government shall be indemnified and saved harmless against claims for damages and/or injuries."  See Exhibit 3 (Contract) at page 47. Therefore, CESI "has expressly precluded itself from seeking contribution from the Federal Defendants.  "As explained in the Restatement of Torts, '[a] person who has a right of indemnity against another person . . . does not have a right of contribution against that person and is not subject to liability for contribution to that person.  Restatement (Third) of Torts: Apportionment of Liab. § 23(c) (2000)."  Hudert v. Alion Science & Tech. Corp., supra, at *3.  Thus, if CESI "is found liable in this matter, by agreeing to indemnify the United States in the event it is found to be negligent, it has bargained away the right to seek contribution from the United States as a joint tortfeasor."  See id. (citation omitted).

## IV.    PLAINTIFFS FAIL TO DEMONSTRATE THAT UNITED STATES WAS NEGLIGENT

The United States hired an independent contractor to provide maintenance and basic operation of the SDC.  It cannot be forgotten that the contract imposed on CESI the obligation and requirement to protect the public from *any hazard that may result from its work*.  See

Exhibit 3 (Contract) at page 28 (emphasis added).  Any alleged negligent acts of the independent

contractor cannot be imposed on the Government.  Plaintiffs have not shown that the

Government breached any duty owed to the Plaintiffs.

Assuming, *arguendo*, that the United States had any duty to the Plaintiffs to warn of the

dangers associated with steam—which it did not—those duties were fully and validly delegated

to CESI.  In Hockman v. United States, 71 F.Supp. 5 (D.D.C. 1990), an injured construction

worker brought an FTCA suit against the United States, seeking to recover for injuries he

sustained when he fell into an airshaft while working at the FBI Headquarters Building.  In

Hockman, the plaintiff advanced allegations of negligence against the Government.  In granting

the United States' motion to dismiss, the District Court found that the Government had delegated

any possible duty, by contract, to the independent contractor and therefore, could not be held

liable to the plaintiff.  Id. at 7-8.

Similarly, in Jennings, an injured employee of an independent contractor brought an

FTCA suit against the United States based on injuries sustained on a federal construction site.

Jennings, 530 F.Supp. 40.  In Jennings, the contractor assumed broad responsibility to control

and supervise the construction and to provide for the safety of its employees.  Id. at 43.  The

District Court granted the Government's motion to dismiss the action because: (1) the

Government had delegated any responsibilities it may have had to the contractor; (2) the

Government cannot be liable for the negligence of an independent contractor; and (3) the

Government was not liable for failing to supervise the employees of the independent contractor.

Id. at 44-46.  For the same reasons identified above, having delegated any alleged duty to CESI,

the United States cannot be held liable to plaintiffs for the negligence, if any, of the contractor.

See, e.g., Logue v. United States, 412 U.S. 521, 528-29 (1973); Flynn v. United States, 631 F.2d

11

678, 681-82 (10th Cir. 1980); <u>Alexander v. United States</u>, 605 F.2d 828, 835 (5th Cir. 1979);

<u>Gibson v. United States</u>, 567 F.2d 1237, 1243-44 (3rd Cir. 1977), <u>cert</u>. <u>denied</u>, 436 U.S. 925

(1978); <u>United States v. Page</u>, 350 F.2d 38, 33-34 (10th Cir. 1965), <u>cert</u>. <u>denied</u>, 382 U.S. 979

(1966); <u>Hochman</u> <u>v. United States</u>, 753 F.Supp. 5 (D.D.C. 1990); <u>Jennings v. United States</u>, 530

F.Supp. 40, 45, n.5 (D.D.C. 1981).

 Moreover, any duty that the United States may have had to warn the public of a

dangerous condition is contingent up its knowledge of that dangerous condition.  In order to

meet its burden, Plaintiffs must show that the Federal Defendant had actual or constructive

notice of the hazard, but failed to correct or remove the danger.  <u>See</u>, <u>e.g.</u>, <u>Hickey v. Washington</u>

<u>Metropolitan Area Transit Authority</u>, 360 F. Supp. 2d 60, 62 (D.D.C 2004), <u>Marinopolski v.</u>

<u>Irish</u>, 445 A.2d. 339, 340 (D.C. 1982).  Plaintiffs have not provided any evidence showing that

the Federal Defendant had actual or constructive notice that steam was emanating from Manhole

42 on September 11, 2004.  In fact, GSA had no notice of steam emanating from Manhole 42 on

September 11, 2004, until after the alleged incident.

 The facts as presented, even when viewed in a light most favorable to the Plaintiffs, do

not show that the Federal Defendant knew of the dangerous condition and failed to exercise

reasonable care in addressing such conditions.  All work orders show that CESI employees were

at Manhole 42 a few days before the incident and did not provide GSA with any indication that

there was a potential problem or a leak.  <u>See</u> Exhibit 6 (Sept. 7, 2004 FWO) and Exhibit 7 (Sept.

9, 2004 FWO).  The work orders showing that CESI pumped out Manhole 42 earlier that week

were "field work orders" created by CESI employees, not by GSA employees.  Plaintiffs have

failed to show that CESI employees informed GSA employees of any potential problems.

 Since Plaintiffs have not shown that the Federal Defendant had either actual or

12

constructive notice of a potential hazard, they failed to meet their burden, therefore, the Federal

Defendant cannot be held liable for any alleged negligence.  See e.g., Hickey, 360 F. Supp. 2d

60, 62, Marinopoliski, 445 A.2d 339, 340.

## CONCLUSION

For the foregoing reasons, the third party complaint brought against the United States by

CESI should be dismissed for lack of jurisdiction and for failure to state a claim.  Even if,

however, this Court determines that it does have jurisdiction and that the third party complaint

does state a claim, summary judgment is appropriate in favor of the United States against all

parties.

Date: September 7, 2007                         Respectfully submitted,


                                        _____/s/_____
                                        JEFFREY A. TAYLOR, DC BAR # 498610
                                        United States Attorney


                                        _____/s/_____
                                        RUDOLPH CONTRERAS, DC BAR #434122
                                        Assistant United States Attorney



                                        _____/s/_____
                                        KAREN L. MELNIK, DC BAR #436452
                                        Assistant United States Attorney
                                        555 Fourth Street, N.W.—Civil Division
                                        Washington, D.C. 20530
                                        (202) 307-0338

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATALIE T. HSIEH, <u>et al</u>., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No:  06CV1218 (CKK) |
| | ) | |
| CONSOLIDATED ENGINEERING | ) | |
| SERVICES, INC., <u>et al</u>., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of Third Party Defendant United States' Motion to Dismiss or, in the Alternative, for Summary Judgment, any Opposition thereto, and the entire record herein, it is this _____ day of _____, 2007 hereby

ORDERED that the Third Party Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment be, and it hereby is granted; and it is

FURTHER ORDERED, that all claims in this action against the United States are dismissed.

_____
United States District Judge Kollar Kotelly

Copies to:

Karen Melnik, Esq.
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

David D. Hudgins, Esq.
Debra S. Stafford, Esq.
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA 22314


Robert B. Adams, Esq.
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204