**EXHIBIT 16**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES E. PRESLEY and
VICTORIA D. PRESLEY,

    Plaintiffs,

      v.

COMMERCIAL MOVING & RIGGING, INC.,
and CMR LEASING, INC.,

    Defendants,

and

JACOBS ENGINEERING GROUP, INC.,
JACOBS FACILITIES f/k/a J.E. SVERDRUP
CRSS, and CRSS CONSTRUCTORS, INC.,

    Defendants/ Third-Party Plaintiffs,

      v.

THE UNITED STATES OF AMERICA,

    Third-Party Defendant.

Civil Action No. 04-0014 (CKK)

**MEMORANDUM OPINION**
(March 29, 2005)

      Currently before the Court is Third-Party Defendant the United States' ("United States")

Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), or in the

alternative, for Summary Judgment pursuant to Rule 56. The Third-Party Plaintiffs Jacobs

Engineering Group, Inc., Jacobs Facilities f/k/a J.E. Sverdrup CRSS, and CRSS Constructors,

Inc. (collectively "CRSS") have filed an Opposition to the United States' Motion, to which the

United States has filed a Reply. After reviewing CRSS's Third-Party Complaint, the briefs

described above, the relevant submitted documents, and the applicable law, the Court shall grant

the United States' Motion for Summary Judgment.

## I: BACKGROUND

On January 6, 2003, Plaintiffs Charles and Victoria Presley ("Plaintiffs") filed a tort

action in the Superior Court for the District of Columbia seeking damages for injuries sustained

by Charles Presley on January 7, 2000, while he was working on a construction project to

renovate part of the Main Building of the United States Department of State. Pls.' Am. Compl.

("Am. Compl.") ¶¶ 5-6. Plaintiffs allege that Mr. Presley, a construction worker on the project

employed by the John Grimberg Company, was struck by a fan shroud suspended by a crane. *Id.*

¶¶ 5-7. After being struck by the fan shroud suspended from the crane, Mr. Presley was knocked

from the twenty-foot high cooling tower on which he was working, resulting in various injuries.

*Id.* ¶¶ 7-10.

The cooling tower relevant to Mr. Presley's injuries was being assembled off-site on

nearby land owned by the National Park Service. On December 14, 1999, the National Park

Service issued a special use permit to the Department of State ("Permit") allowing the use of

National Park Service land to assemble the cooling tower from January 6, 2000 to January 21,

2000. *See* Permit ¶ 31 (attached as Ex. B. to Third-Party Compl.). Defendant Commercial

Moving and Rigging, Inc. ("CMR"), was a subcontractor on the project, and supplied the crane

and a crane operator necessary to move the assembled cooling tower from the assembly site on

the Park Service land to the State Department Building under renovation. Am. Compl. ¶ 5.

Plaintiffs allege that subcontractor CMR breached a duty of reasonable care in failing to ensure

2

that the crane involved in the injury was operated safely. *Id.* ¶¶ 4-12. Plaintiffs also assert that

CRSS -- hired by the United States General Services Administration ("GSA") to provide

construction management services and to oversee the project -- breached a duty of reasonable

care in failing to "anticipate, detect and abate safety hazards on the project" and by failing in its

duties to (1) ensure that crane operators knew and followed safe operating procedures, (2)

provide fall protection, (3) guarantee that contractors were complying with their own safety

obligations. *Id.* ¶¶ 14, 15, 20; Third-Party Compl. ¶ 3. In their Opposition to CRSS's Motion for

Summary Judgment,[1] Plaintiffs cite to safety and monitoring obligations imposed by the permit

as one source of CRSS's duty of care. Third-Party Compl. ¶ 5.[2]

On December 23, 2003, CRSS joined the United States as a third-party defendant,

asserting a claim against the United States under the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 2675(a), for contribution in the event that CRSS is found liable to the Presleys.[3] CRSS

alleges that, "[a]s the permit-holder of the Permit, the United States undertook all of the

obligations imposed therein, including the obligation to monitor all construction contractors'

compliance with their own safety obligations." Third-Party Compl. ¶ 8. CRSS denies all

---

[1] This filing was not provided to the Court, as it was originally made in Superior Court.

[2] A condition of the Permit is that "[t]he permittee will require its employees and
contractors to follow all relevant OSHA safety regulations and exercise all standard safety
precautions." Permit ¶ 31.

[3] 28 U.S.C. § 2675(a) explains that ordinarily, a tort claimant against the United States
must first present the claim to the appropriate Federal agency. This requirement does not apply,
however, to claims of a third party plaintiff, such as the present one. *Id.*
The United States characterizes the claim as asserted under 28 U.S.C. § 2672, which
allows the head of each Federal agency to settle claims against the United States, and 28 U.S.C. §
1331, which grants the Federal courts original jurisdiction over claims arising under federal law.
*See* Third-Party Def.'s Mot.

3

liability but alleges that, in the event that CRSS is found liable to Plaintiffs, "such liability of

CRSS will have been brought about and caused, in whole or in part, by the United States' failure

as the permit-holder to satisfy the safety monitoring obligations imposed by the Permit." Third-

Party Compl. ¶ 9.

In response, the United States filed a notice of removal in this Court on January 8, 2004,

pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. On March 10, 2004, the United States filed a

motion to dismiss or, in the alternative, for summary judgment. The United States points out that

the FTCA does not waive sovereign immunity for liability arising from the tortious conduct of

independent contractors. Third-Party Def.'s Mot. to Dismiss, or Alternatively for Summ. J.

("Third-Party Def.'s Mot."). The United States argues that CRSS, rather than the GSA, was

responsible for the "day to day operations of CRSS employees" and control of the "detailed

physical performance of CRSS employees." Third-Party Def.'s Mem. in Support of Mot.

("Third-Party Def.'s Mem.") at 8. Because of these factors, the United States asserts that "there

is no basis for concluding that CRSS' actions can or should be imputed to the United States and

[there is] no waiver of sovereign immunity." *Id.* at 9. The United States has attached a

declaration of Mr. Maurice Spraggins, project manager for the Department of State renovation

project and overseer of the contract between the GSA and CRSS ("Spraggins Decl."). In the

declaration, Mr. Spraggins outlines the terms of the contract and describes the Permit issued by

the National Park Service to the Department of State.[4]

---

[4] The United States has included the information from Mr. Spraggins' Declaration in a
Statement of Material Facts as to Which There is No Genuine Issue (Third-Party Def.'s Stmt.").
CRSS has failed to respond to the United States' Statement in a manner consonant with Local
Civil Rule 7(h) and 56.1. Moreover, in its Opposition to the Third-Party Defendant's Motion,
CRSS has failed to contradict or contest any of the facts forwarded in Mr. Spraggins'

CRSS filed an opposition to the United States' Motion on March 22, 2004. In its Opposition, CRSS argues that "[b]ecause this claim alleges liability against the government based on its own actions, this Court has jurisdiction over this claim under 28 U.S.C. § 1346(b)(1), the FTCA, 28 U.S.C. § 2675(a) and Fed. R.Civ. P. 14(a)." Third-Party Pls.' Mem. in Opp'n. to Third-Party Def.'s Mot. to Dismiss ("Third-Party Pls.' Opp'n.") at 3. CRSS also stresses that its claim is procedurally proper as a third-party contribution claim under Fed. R. Civ. P. 14(a). *Id.* at 4. CRSS argues that the United States' reliance on the "independent contractor defense" is "misplaced" and "entirely misses the point of CRSS's third-party claim." *Id.* at 5. CRSS insists that its claim is against the United States as a potential joint tort-feasor who, if any breach occurred, breached its own obligation under the Permit to "ensure contractor compliance with safety rules." *Id.* at 6. CRSS asserts that "[t]here is no provision in the Permit allowing the United States to delegate this obligation." *Id.* Therefore, CRSS maintains, the United States cannot assert an independent contractor defense because the obligations under the Permit remained with United States at all times. *Id.*

In the final section of its Opposition, CRSS includes a "short preview" of the discretionary function immunity which it intends to assert as a defense to Plaintiffs' claims. *Id.*

---

Declaration. According to Local Cvil Rule 7(h), therefore, the Court will deem all facts asserted in the United States' Statement as admitted by CRSS.

Neither CRSS nor the United States has attached the contract between GSA and CRSS, with the United States explaining that the contract "is approximately one-hundred pages and covers many points not at issue here." The United States has offered to provide a copy at the Court's request. Third-Party Def.'s Mem. at 2 n.3. Such a step is not necessary at this time, not only because of CRSS's failure to contest Mr. Spraggin's characterization of the contract, but also because -- to a large extent -- the parties' conflict is not over the actual wording of the contract, but instead over what the Permit requires. Therefore, the Court finds a submission of the contract unnecessary. *Id.*

at 7-10. In this section, CRSS admits that it had the obligation to monitor the safety compliance of "other construction contractors who were actually doing the construction work on the State Department renovation project–including Plaintiff Charles Presley's employer." *Id.* at 8. CRSS argues that this obligation is the type of discretionary function that is immune to FTCA liability. *Id.* at 9. CRSS concludes that the same immunity granted to the government should be granted to itself as a government contractor.[5] *Id.* at 9-10.

The United States filed a Reply on April 9, 2004, reiterating its claim that the independent contractor defense applies. Because "CRSS was the United States' contractor at the site," the United States summarizes, "if the United States allegedly failed to fulfill a duty of oversight or management at the site, it was acting through CRSS." Third-Party Def.'s Reply at 4. According to the United States, "[n]o matter how the claim against the United States is characterized, the result would be that the United States would be held liable for the acts or negligence of an independent contractor, an impermissible result." *Id.* (citations omitted).

## II: LEGAL STANDARD

Third-Party Defendant United States brings this action as a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. The Court shall briefly review the relevant legal standards under each rule.

---

[5] While seeking to join the United States as a potential joint tort-feasor, CRSS posits that, ultimately, the claims against both CRSS *and* the United States should be dismissed based on discretionary function immunity. *See* Third-Party Opp'n. at 10.

6

A.    *Rule 12(b)(1)*

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1). In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A court may appropriately dispose of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152 n.1 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)). At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

*B.    Rule 12(b)(6)*

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

8

C.    *Rule 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty*

9

*Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III:  DISCUSSION

The FTCA waives sovereign immunity in certain circumstances, allowing the United States to be sued for the negligent acts or omissions of its employees, when they act within the scope of their employment. 28 U.S.C. § 1346(b); *see United States v. Orleans*, 425 U.S. 807, 813 (1976); *Cannon v. United States*, 645 F.2d 1128, 1133 (D.C. Cir. 1981). The FTCA, however, expressly excludes the acts of contractors for the United States from those acts for which the Government can be held liable. 28 U.S.C. § 2671. Therefore, courts routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor. *See Cannon*, 645 F.2d at 1133-39 (care of federal prisoners delegated to prison operated by the mayor and council of the District of Columbia); *Cooper v. United States Gov't and Gen. Serv. Admin.*, 225 F. Supp. 2d 1, 4 (D.D.C. 2002) ("When the United States delegates a responsibility to an independent contractor, it is not responsible in tort for the independent contractor's negligent performance of that responsibility.").

10

In these cases, the crucial issue has been whether the contractor was acting as an employee or agent of the United States. The relationship between an independent contractor and the government as it relates to the FTCA is well-settled: this determination depends on whether the United States could "control the detailed physical performance of the contractor," *Logue v. United States*, 412 U.S. 521, 527 (1973), or whether the United States can supervise the "day-to-day operations" of the contractor, *Orleans*, 425 U.S. at 813-14. *See, e.g., Cooper*, 225 F. Supp. at 3-4; *Jennings v. United States*, 530 F. Supp. 40, 42-45 (D.D.C. 1981). If the contractor manages the daily functioning of the job, with the federal actor just exercising broad supervisory powers, the contractor is likely an independent contractor, even if the government has reserved the right to inspect the contractor's work and monitor its compliance with federal law. *Orleans*, 425 U.S. at 815; *Lipska v. United States*, 369 F.2d 288, 291 (2d Cir. 1966).

CRSS admits that, under its contract with the GSA, it served as a contractor with the explicit duty to monitor the site safety conditions and practices of the other contractors on the construction site. Third-Party Pls.' Opp'n. at 8. Furthermore, CRSS has not disputed the United States' statement that CRSS, rather than the federal government, controlled the detailed physical performance of CRSS employees and supervised the day-to-day operations of CRSS. *See* Third-Party Def.'s Stmt. ¶¶ 5-7. Indeed, CRSS specifically admits that it "had this safety monitoring obligation pursuant to a contract with the United States." Third-Party Pls.' Opp'n at 8. The contract confirms this, as it specifically assigns responsibility for day-to-day supervision and for "providing independent management and supervision of its employees" to CRSS. Spraggins Decl. ¶ 5. In contrast, under the terms of the contract, "GSA personnel do not supervise the day-to-day operations of CRSS employees" and "do not control the detailed physical performance of

11

CRSS employees." *Id.* ¶¶ 6-7. The contract between CRSS and the GSA began in 1991 and was still in effect between January 6 and January 21, 2000, the time in which the Department of State held the Permit. *See* Third-Party Def.'s Stmt. ¶¶ 1, 3, 8; Permit at 1. As such, in both contract and actual practice, CRSS certainly cannot be considered to be an employee of the government under the FTCA, and therefore its claim falls within the rubric of the "independent contractor exception." When the United States delegates a responsibility to an independent contractor, it is not responsible in tort for the independent contractor's negligent performance of that responsibility. *See Hockman v. United States*, 741 F. Supp. 5, 7 (D.D.C. 1990) (citing *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985)); *Jennings v. United States*, 530 F. Supp. 40 (D.D.C. 1981).

In an attempt to circumvent the "independent contractor exception," which would ordinarily bar CRSS' action against the United States without a waiver of sovereign immunity by the government, CRSS argues that, for the specific length of the time covered by the special use Permit, the United States had an additional duty to "ensure contractor compliance with safety rules" that it did not delegate. *See* Third-Party Pls.' Opp'n. at 5; *id.* at 6 ("Under the Permit, *not* the contract between CRSS and the government, the government as permit-holder retained certain safety obligations to all users of the permit site, including, potentially [Plaintiff] Charles Presley."); *see also* Permit ¶ 31 ("The permittee will require its employees and contractors to follow all relevant OSHA safety regulations and exercise all standard safety precautions."). CRSS explains, "There is no provision in the Permit allowing the United States to delegate this obligation. The fact that CRSS may or may not *also* have this obligation . . . only means that CRSS and the United States would be considered joint tort-feasors if the failure to perform such

12

obligations caused Presley's injuries." *Id.* at 6 (emphasis in original). As such, CRSS argues that it is not seeking idemnification from the United States, i.e., recovery from the United States for acts committed by CRSS, but is instead seeking contribution, i.e., forcing the United States to share in any liability to Plaintiffs arising out of its own negligence. *Id.* at 5.

CRSS cites only one case, *Ryan v. United States*, 233 F. Supp. 2d 668 (D.N.J. 2002), to support its assertion that the United States can be held liable for this duty to ensure safety during the time-period covered by the Permit. In *Ryan*, the New Jersey court found that the United States was *not* liable for the acts of an independent contractor. *Id.* at 678 (finding that third-party plaintiff fell under the "independent contractor exception" to the FTCA even where "the government exercised broad supervisory powers over [third-party plaintiff], reserved the right to inspect [third-party plaintiff's] work, and maintained enough authority to compel [third-party plaintiff] to comply with federal law," because the government "did not retain day-to-day control over [third-party plaintiff's] every action"). However, the *Ryan* court did find that the United States was potentially liable for the failure to perform its own contractual duties to survey and inspect the work site, and, as such, the court declined to grant the requested motion for summary judgment. *Id.* ("This Court finds, though, that the United States can be sued for its own alleged acts of negligence because it is not shielded in this case by the discretionary function exception to the FTCA."). Importantly, the *Ryan* court concluded that

> the record shows that the contract included a Differing Site Conditions Clause that stated that, if notified of a problem, the United States must "investigate the site conditions promptly" and modify the contract if necessary. Also included in the record is the Pre-Construction Safety Conference outline which states that the United States would conduct daily and weekly inspections of the site.

*Id.* at 684. As such, in *Ryan*, in both contract and actual practice, the government retained

13

significant duties outside of those delegated to the independent contractor. *Id.* at 678-82.

The Court, upon an analysis of both CRSS' arguments in general and *Ryan* in particular, concludes that CRSS' position is meritless. An examination of *Ryan* shows that it is inapposite to the current situation: while some independent contractor aspects were involved in *Ryan*, it was ultimately a case in which the government had an explicit contract that delegated some responsibilities but retained other duties. Here, the contractual relationship between CRSS and the United States, nearly a decade-old at the time of the accident, established that CRSS acted as the sole safety monitor on construction work in which CRSS was involved. CRSS, in its Opposition, admits that

> CRSS had this safety monitoring obligation pursuant to a contract with the United
> States, but it was not a construction contractor itself and did no construction work
> on the job. It's only construction obligation was to monitor the other construction
> contractors and to intervene if -- and only if -- it actually observed someone
> working in an imminent danger [sic] situation.

Third-Party Pls.' Opp'n at 8. As such, under the relevant contract in this case, the government retained no day-to-day safety monitoring duties.

CRSS places too much weight on the language of the Permit in its argument. Importantly, the temporary, special use Permit was between the National Park Service and the Department of State, two government agencies. CRSS was not a party to its negotiation, drafting, or signing. No provision dealt specifically with CRSS, and CRSS has not introduced any evidence or made any argument that the two government agencies actually contemplated how its duties would be affected under the special use Permit. Rather, CRSS is only a party in contract with the State Department, and it is that contract that governs its duties under the existing relationship. While the Permit seems to indicate that the "Permitee," i.e., the State

14

Department, had certain duties, including a duty to "require its employees and contractors to follow all relevant OSHA safety regulations and exercise all standard safety precautions," Permit ¶ 31, these duties were delegated explicitly and implicitly by existing contracts.  While CRSS posits that there is no explicit "provision in the Permit allowing the United States to delegate" its obligations under the Permit, Third-Party Pls.' Opp'n at 6, it may also be said that there is no clear provision that prevents such a delegation or supersedes previous delegations.[6]  More importantly, the very language of the Permit indicates that the government may not be held liable as to any omission or activity in connection with the Permit; indeed, the Permit specifically provides: "To the extent that the work is performed by non-Governmental persons or organizations, the permittee shall require such persons or organizations to . . . (c) Indemnify, save and hold harmless and defend the United States against all fines, claims, damages, losses, judgments and expenses arising out of, or from any omission or activity in connection with this permit."  Permit ¶ 9(c) (on page marked "263").

CRSS' implicit argument that these duties were not delegated pursuant to existing contracts yields absurd and far-reaching results that plainly were not contemplated by the Permit. For instance, the Permit also appears to require that "all construction trash, debris, and litter left at the site shall be removed by the permittee," *id.* ¶ 29, and that the "permittee" replace any trees that are removed, *id.* ¶ 22, provide documentation of compliance with the Manual of Uniform

---

[6] The Permit does note: "This permit may not be transferred or assigned without the consent of the National Park Service, in writing."  Permit ¶ 4.  However, there is a distinct difference between the assignment or transfer of the actual permit to a third-party, i.e., completely removing the State Department (the Permittee), from the legal relationship, and the delegation of duties arising under the Permit.  The Permit does not forbid delegation of responsibilities to contractors.

Traffic Control Devices, *id.* ¶ 25, and test impacted soils in order to determine whether the soil "shall support successful tree and other landscape growth," *id.* ¶ 27. However, it was certainly understood that employees of the State Department (the "permittee") were not required to visit the Park Service land in order to pick up trash, plant trees, or test soil, as required by the Permit; rather, the contractors hired by the government to renovate the State Department Building were delegated these responsibilities as analogs to their overall duty to complete the construction project.[7]

Simply, as CRSS admits, the government hired it to monitor the safety of both the State Department construction project and the antecedent assembly of the cooling tower. This was CRSS' sole responsibility: it did not participate in any actual "construction" involving physical or mechanical labor. It was in charge of the day-to-day maintenance of safety, and was paid under contract so that the government would not need to place its employees in such a position. CRSS' contract with the government to perform this obligation was nearly ten years old when Plaintiff Presley was injured in January 2000. In contrast, the Permit to build the cooling tower on Park Service land ran only for sixteen (16) days, from January 6, 2000 to January 21, 2000.

---

[7] Taking CRSS' argument at face value, that the government had duties under the Permit independent of those it previously had delegated to its contractors, leads to absurd and often-unlawful results. For instance, Permit states, "The permittee hereby agrees to accept responsibility and assume liability for any and all tort claims arising from the actions or omissions of its representatives . . . connected with the work performed . . . to the greatest extent permitted by law." Permit ¶ 9. However, the applicable law in this situation, the FTCA, allows for *no* responsibility or liability to be assumed by the United States for the acts of independent contractors. 28 U.S.C. § 2671; *see Orleans*, 425 U.S. at 813; *Cannon v. United States*, 645 F.2d at 1133; *cf. Jennings*, 530 F. Supp at 44 ("[E]ven if these [District of Columbia Construction R]egulations could be contorted to impose initially some responsibilities on the Government, no provision of the Construction Regulations bars the shifting of these obligations to the contracting party, as was done in the instant case.").

*See* Permit at 1. The only reason for the issuance of the Permit was the need to assemble the
cooling tower off-site. Am. Compl. ¶¶ 5-6. As such, the current case is much different than the
situation in *Ryan*, where the government arguably had close contact with its contractors and had
both specific supervisory tasks and explicit obligations under the relevant contract. Here, the
government's involvement in the State Department construction project was quite minimal, as it
was only incidentally involved in obtaining a Permit which allowed its contractors greater room
to assemble needed cooling towers. Unlike the situation in *Ryan*, here the government had a
long-standing contract that gave one contractor, CRSS, one responsibility -- the duty to monitor
site safety.

The Court concludes that the Permit was not intended to reconfigure the existing
relationships between the government and its contractors; rather, the Permit was simply an
incidental, procedural need to secure a space for the government's contractors -- which already
had clear responsibilities and delegated duties -- to conclude their construction work. The
existing pattern, practice, and contracts between the government and its contractors remained
constant during the Permit period, and to the extent that the Permit required new duties, such as
planting trees, testing soil, cleaning up trash, or monitoring compliance with OSHA, those duties
were implicitly delegated to the government's existing contractors in confluence with their
previous responsibilities. Therefore, the United States did not have some extraneous safety
monitoring obligation not delegated to CRSS or the other contractors. Because it lacked a safety
monitoring obligation separate to the one delegated to its independent contractor, CRSS, the
government cannot be sued for any negligent violation of a safety supervision duty that resulted
in the Presley accident.

17

In sum, the Court finds no dispute as to whether CRSS was an independent contractor. Moreover, the Court concludes that under its contract, CRSS had the specific duty to monitor the safety of the construction site at all relevant times. The Permit between the Park Service and the State Department to allow temporary use of Park Service land to complete construction of a cooling tower in no way altered the relationship between the government and CRSS. The government took on no new, extraneous monitoring obligations that were not implicitly delegated under its existing contracts. Therefore, the Court finds that the United States' cannot be held liable, as any negligence in the general safety monitoring of the construction site was on the part of CRSS, an independent contractor.

## IV: CONCLUSION

For the foregoing reasons, the Court finds that the FTCA does not render the United States' liable for any alleged failure to monitor the safety obligations of the construction site, as all safety monitoring duties had been delegated to CRSS, an independent contractor. CRSS's attempt to join the United States as a potential joint tort-feasor fails. Accordingly, the Court will grant the United States' Motion for Summary Judgment. In addition, the Court orders that the parties show cause by April 12, 2005, why this case should not be remanded to D.C. Superior Court now that the party which had removed the case to federal court is no longer a part of this lawsuit. An Order accompanies this Memorandum Opinion.

Date:   March 29, 2005

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

18