UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES OF AMERICA, et al., )<br><br>Defendants. )<br>_____)<br>CONSOLIDATED ENGINEERING )<br>SERVICES, INC., defendant and )<br>third-party plaintiff, )<br><br>v. )<br><br>DAY & ZIMMERMAN )<br>SERVICES, INC., third-party defendant. )<br>_____) | Civil Action No. 1:06-cv-01218<br>(CKK/JMF)<br><br>Next event:    September 7, 2007<br>Dispositive Motions<br>Deadline |

**DEFENDANT/CROSS-CLAIM DEFENDANT CONSOLIDATED ENGINEERING
SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DEFENDANT/CROSS-CLAIM PLAINTIFFS UNITED STATES OF AMERICA
AND GENERAL SERVICES ADMINISTRATION'S CROSS-CLAIM AGAINST
<u>CONSOLIDATED ENGINEERING SERVICES, INC.</u>**

Defendant/cross-claim defendant Consolidated Engineering Services, Inc.

("CESI"), by undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 7

(LCvR 7), hereby moves this Honorable Court for Partial Summary Judgment on

defendants/cross-claim plaintiffs United States of America and General Services

Administration's ("US/GSA") Cross-claim against CESI for indemnity and contribution.

Based on the material facts not in dispute, as a matter of law, CESI is entitled to summary

judgment to the extent US/GSA seeks indemnity and contribution for its own negligence.

A Statement of Material Facts with Exhibits, Memorandum of Points and Authorities, and Proposed Order are being filed this same day.

WHEREFORE, for the reasons stated in this Motion, the Statement of Material Facts, and the Memorandum of Points and Authorities in Support of the Motion, Consolidated Engineering Services, Inc. respectfully requests that this Honorable Court grant Summary Judgment in its favor on US/GSA's cross-claim against CESI for indemnity and contribution to the extent any judgment may be rendered in favor of plaintiff Natalie Hsieh and/or plaintiff Matthew Hsieh against US/GSA for any negligence of US/GSA. Consolidated Engineering Services, Inc. further requests an award of its costs and attorneys' fees and such other relief as the Court deems proper.

**DEFENDANT/CROSS-CLAIM DEFENDANT CONSOLIDATED ENGINEERING SERVICES, INC. RESPECTFULLY REQUESTS ORAL ARGUMENT ON THE MOTION**

**CONSOLIDATED ENGINEERING SERVICES, INC.**

By:    /s/ David D. Hudgins
       David D. Hudgins (D.C. Bar # 362451)
       HUDGINS LAW FIRM, P.C.
       515 King Street, Suite 400
       Alexandria, VA 22314
       Tel: (703) 739-3300
       Fax: (703) 739-3700
       *Counsel for Consolidated Engineering Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 7th day of September 2007 to:

Karen L. Melnik
Assistant United States Attorney
555  4th Street, NW
Washington, DC  20530
*Counsel for Federal Defendants*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day &*
*Zimmerman Services, Inc.*

Robert B. Adams
Timothy R. Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA  22102
*Counsel for Plaintiffs*

/s/ David D. Hudgins
David D. Hudgins

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATALIE T. HSIEH, et al., )<br><br>    Plaintiffs,    )<br><br>v.    )<br><br>UNITED STATES OF AMERICA, et al., )<br><br>    Defendants.    )<br>_____)<br><br>CONSOLIDATED ENGINEERING )<br>SERVICES, INC., defendant and )<br>third-party plaintiff,    )<br><br>v.    )<br><br>DAY & ZIMMERMAN )<br>SERVICES, INC., third-party defendant. )<br>_____) | Civil Action No. 1:06-cv-01218<br>    (CKK/JMF)<br><br>Next event:    September 7, 2007<br>    Dispositive Motions<br>    Deadline |

**DEFENDANT/CROSS-CLAIM DEFENDANT CONSOLIDATED ENGINEERING**
**SERVICES, INC.'S STATEMENT OF**
**MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendant/Cross-claim Defendant Consolidated Engineering Services, Inc. ("CESI"), by undersigned counsel, pursuant to Fed. R. Civ. P. 56 and LCvR 7(h), provides its Statement of Material Facts as to which there is no genuine dispute, as follows:

**Material Facts Not in Dispute**

1.    The United States, through the General Services Administration (hereinafter "US/GSA"), issued a solicitation dated May 25, 2001 requesting proposals concerning maintenance and repair of the Heating Operation and Transmission District

Steam Distribution Complex (referenced herein and in the accompanying Memorandum of Points and Authorities as the "HOTD/SDC") (See generally Exhibit A, Contract No. GS-11P-01-YMC-0085, Solicitation, Offer and Award p. 1).

2.    US/GSA received proposals, and awarded a contract to Day & Zimmerman Services, Inc. ("D&Z"); the contract was prepared and drafted by the US/GSA, was numbered GS-11P-01-YMC-0085, and was awarded to D&Z on January 22, 2002 (Exhibit A, Contract No. GS-11P-01-YMC-0085).

3.    Contract No. GS-11P-01-YMC-0085 was amended by the US/GSA to exercise the option to extend the term of the contract with D&Z for a 12 month period, effective March 1, 2003 to February 28, 2004 (Exhibit B, Amendment of Solicitation effective March 1, 2003).

4.    Contract No. GS-11P-01-YMC-0085 was amended by the US/GSA and D&Z to exercise the option to extend the term of the contract with D&Z for a second 12 month period, effective March 1, 2004 to February 28, 2005 (Exhibit C, Amendment of Solicitation effective March 1, 2004).

5.    Effective August 30, 2004, Contract No. GS-11P-01-YMC-0085 was transferred and novated from D&Z to CESI by an Amendment of Solicitation/Modification of Contract executed by US/GSA on August 27, 2004 and made effective by its express terms on August 30, 2004 (Exhibit D, Amendment of Solicitation/Modification of Contract).    Contract No. GS-11P-01-YMC-0085 and its modifications, amendments, and novation are referenced herein and in the accompanying Memorandum of Points and Authorities as the "HOTD/SDC Contract".

6.      Plaintiffs Matthew Hsieh and Natalie Hsieh claim that they were injured and damaged as a result of an incident that they allege occurred on Saturday, September 11, 2004 (Second Amended Complaint, ¶¶ 5, 11, 12, 14, 18).

7.      Pursuant to the HOTD/SDC Contract, CESI was to perform maintenance and repair services for the HOTD/SDC (Exhibit A, Pt. I, Section C, ¶ 1, p. 17).

8.      The HOTD/SDC Contract proscribed a specific schedule for the contractor to perform inspections and preventive maintenance; tunnels were to be inspected weekly and manholes inspected monthly, and preventative maintenance on each zone in the HOTD/SDC was to be done "in the month corresponding to the zone number" (Exhibit A, Pt. 1, Section C.1.A, p. 18).

9.      The Government, through US/GSA, had direct supervision over the work of the contractor. The HOTD/SDC Contract provided that, "The staff of Government employees at GSA HOTD who are specifically dedicated to **_direct supervision and execution of Steam Distribution Complex maintenance and repair work_**, and to facilitation and quality assurance of contractor maintenance and repair work in the Steam Distribution Complex, comprises of [certain Government employees]" (Exhibit A, Part III, Section J, Exhibit 1, p. 79, ¶ 1 after bullets) (emphasis added).

10.     Pursuant to the HOTD/SDC Contract, CESI had to perform work in accordance with specific instructions from the US/GSA. "The Contractor shall perform preventative maintenance on all equipment in accordance with Government checklists" (Exhibit A, Part I, Section C.1.B, p. 18). The Preventive Maintenance Checklists "define the procedures for inspecting components located in the Steam Distribution Complex" (Exhibit A, Part III, Section J, Exhibit 2, p. 80; Exhibit A, Part III, Section J, Exhibit 2,

Checklists, p. 80-89). The HOTD/SDC Contract stated that, "The Contractor shall confirm these procedures [for inspecting components] when performing preventive maintenance inspections" (Exhibit A, Part III, Section J, Exhibit 2, p. 80, ¶ 1).

11.    Repairs or replacements that exceeded $1,000.00 had to be approved by US/GSA before any work was performed (Exhibit A, Part I, Section C.2.E, p. 20; Exhibit E, Deposition of Michael Vrobel, p. 15 ln. 16 – p. 16 ln. 1). Further, the priority and schedule for any repairs or replacements identified by the US/GSA was in the control of the US/GSA (Exhibit A, Part 1, Section C.2.D, p. 19-20). Repairs or replacements identified by the contractor were to be prioritized by the contractor subject to being overruled by the Government (Exhibit A, Part 1, Section C.2.D, p. 19-20).

12.    There was nothing specific in the HOTD/SDC Contract that authorized or directed the contractor to undertake replacement of pipe lines that were in poor condition (Exhibit E, Deposition of Michael Vrobel p. 24, ln. 3-9). Capital improvements and major repairs were in the exclusive control or sole discretion of the US/GSA and were not included in the HOTD/SDC Contract (Exhibit A, Part I, Section C.2.E, p. 20; Exhibit A, Part I, Section C.4, Additional Tasks as Needed, p. 20-21; Exhibit A, Part III, Section J, Exhibit 1, p. 78, ¶ 5).

13.    Repairs that required any interruption of service to federal buildings had to be scheduled through the US/GSA (Exhibit A, Part I, Section C, Conditions of Performance, 4. Impact to Federal Facilities, p. 22).

14.    At times material, US/GSA owned and solely operated the HOTD/SDC and had control over the HOTD/SDC. The contractor, CESI, could not shut down the system or any portion of the system (See Federal Defendants' Answer to Amended

4

Complaint, ¶ 11; Exhibit F, Deposition of John Bright p. 17 ln. 2-8; Exhibit G, Deposition of Greg Westphal, p. 16 ln. 20 – p. 17 ln. 2).

15.     GSA personnel were out "on the street" every day (Exhibit H, Deposition of Harry Washington, p. 47, ln. 4-14), and GSA personnel were performing routine inspections (Exhibit F, Deposition of John Bright, p. 43 ln. 7-10).

16.     After the incident in question on September 11, 2004, GSA employee Joseph Lambright turned off the steam lines in the area of Manhole 42; Lambright was the first one to enter and inspect Manhole 42 after the incident (Exhibit I, Deposition of Joseph Lambright p. 20 ln. 6 – p. 21 ln. 15, p. 23 ln. 4-6).

17.     After his inspection on September 11, 2004, GSA employee Lambright brought CESI employee Joseph Michael Glock down into Manhole 42 and showed Mike Glock where there was a leak that needed to be repaired by CESI (Exhibit I, Deposition of Joseph Lambright p. 31).

18.     CESI needed permission from US/GSA in order to perform the repair of the leak that was present in Manhole 42 on September 11, 2004 (Exhibit I, Lambright p.38 ln.1-7; see generally Exhibit A, Part I, Section C.2.E, p. 20; Exhibit E, Deposition of Michael Vrobel, p. 15 ln. 16 – p. 16 ln. 1).

19.     The HOTD/SDC Contract contains an Insurance Requirement which provided that, "*[t]he Contractor shall provide insurance coverage for all risks associated with performing this Contract and its Task Orders*.  The Contractor assumes full liability and responsibility for all losses and damages to property or injuries to persons *occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractor's employees and agents*.  At

its own expense, the Contractor must maintain adequate insurance coverages during the life of this contract against all claims for damages and/or injuries. The Contractor shall maintain any legally required insurance with respect to its employees and agents. The Government shall be indemnified and saved harmless against claims for damages and/or injuries. Liability insurance coverages, written on the comprehensive form of policy, are required in the following minimum amounts . . ." (Exhibit A, Pt. I, Section H.8.A, p. 41) (emphasis added).

20.     The HOTD/SDC Contract provided that, "Most of the work of this Contract requires the Contractor to work in and around public streets and sidewalk in the District of Columbia. The Contractor shall comply with all Federally and locally mandated safety requirements, and shall cooperate with Federal and local officials that enforce these requirements. The Contractor shall protect Government personnel and the public from any hazards *that may result from its work*, including excavations, open tunnel accesses and manholes, noxious fumes, open flames, noise, and steam and condensate discharges" (Exhibit A, Pt. I, Section C, Conditions of Performance, 3, p. 22).

21.     CESI understood that the HOTD/SDC Contract meant that CESI would be responsible only for damages resulting from its own negligence or from its own work (Exhibit J, Deposition of Richard Matkins, p. 123-124, p. 129 ln. 1 – p. 131 ln. 7).

**CONSOLIDATED ENGINEERING SERVICES, INC.**

By:     /s/ David D. Hudgins
        David D. Hudgins (D.C. Bar # 362451)
        HUDGINS LAW FIRM, P.C.
        515 King Street, Suite 400
        Alexandria, VA 22314
        Tel:  (703) 739-3300
        Fax: (703) 739-3700
        *Counsel for Defendant/Third-party Plaintiff*
        *Consolidated Engineering Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 7th day of September 2007 to:

Karen L. Melnik
Assistant United States Attorney
555  4th Street, NW
Washington, DC  20530
*Counsel for Federal Defendants*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day & Zimmerman Services, Inc.*

Robert B. Adams
Timothy Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA  22102
*Counsel for Plaintiffs*

                        /s/ David D. Hudgins
                        David D. Hudgins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al.,     ) <br>     ) <br>     Plaintiffs,     ) <br>     ) <br> v.     ) <br>     ) <br> UNITED STATES OF AMERICA, et al., ) <br>     ) <br>     Defendants.     ) <br>     ) <br> _____) <br> CONSOLIDATED ENGINEERING     ) <br> SERVICES, INC., defendant and     ) <br> third-party plaintiff,     ) <br>     ) <br> v.     ) <br>     ) <br> DAY & ZIMMERMAN     ) <br> SERVICES, INC., third-party defendant. ) <br>     ) <br> _____) | Civil Action No. 1:06-cv-01218 <br> (CKK/JMF) <br><br> Next event:    September 7, 2007 <br>               Dispositive Motions <br>               Deadline |

**DEFENDANT/CROSS-CLAIM DEFENDANT CONSOLIDATED ENGINEERING
SERVICES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT ON DEFENDANTS/CROSS-CLAIM
PLAINTIFFS UNITED STATES OF AMERICA AND
GENERAL SERVICES ADMINISTRATION'S CROSS-CLAIM**

Defendant/cross-claim defendant Consolidated Engineering Services, Inc. ("CESI"), by undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 7 (LCvR 7), hereby moves this Honorable Court for Partial Summary Judgment on defendants/cross-claim plaintiffs United States of America and General Services Administration's ("US/GSA") Cross-claim against CESI for indemnity and contribution. To the extent US/GSA seek indemnity and contribution for US/GSA's own negligence, those claims should be summarily dismissed. In support hereof, CESI states as follows:

## I.    FACTUAL BACKGROUND

US/GSA owned and operated the Heating Operation and Transmission District Steam Distribution Complex ("HOTD/SDC") (SMF 14).  Pursuant to the HOTD/SDC Contract with US/GSA, CESI provided certain maintenance and repair services in the HOTD/SDC (SMF 7).  US/GSA personnel had direct supervision over the maintenance and repair work done by CESI (SMF 9).  Repairs that required any interruption of service to federal buildings were required to be scheduled through the US/GSA (SMF 13). Additionally, US/GSA solely operated the HOTD/SDC and had control over the HOTD/SDC.  The contractor, CESI, could not shut down the system or any portion of the system (SMF 14).  Moreover, the HOTD/SDC Contract provided a specific schedule for the contractor to perform inspections and preventative maintenance; tunnels were to be inspected weekly and manholes inspected monthly, and preventative maintenance on each zone in the HOTD/SDC was to be done "in the month corresponding to the zone number" (SMF 8).    Therefore, each year, Zone 1 preventative maintenance was performed in January, Zone 2 was performed in February and so on.

CESI was required by US/GSA to physically perform work in accordance with specific instructions from US/GSA as to the actual performance (SMF 10).    The Preventive Maintenance Checklists delineated step-by-step instructions for CESI to follow in performing physical inspections and preventative maintenance on the HOTD/SDC.  Additionally, repairs or replacements that exceeded $1,000 had to be approved by US/GSA before work was performed, and the scheduling and priority for such repairs was controlled by US/GSA (SMF 11).  There was nothing specific in the HOTD/SDC Contract that authorized or directed the contractor to undertake replacement

of pipe lines that were in poor condition, and any capital improvements and major repairs were in the exclusive control or sole discretion of US/GSA and were not included in the HOTD/SDC Contract (SMF 12).

Indeed, GSA personnel were out "on the street" every day (SMF 15). Significantly, after the incident in question on September 11, 2004, GSA employee Joseph Lambright turned off the steam lines in the area of Manhole 42; Lambright was the first one to enter and inspect Manhole 42 after the incident (SMF 16). Only after GSA inspected the manhole and determined what it wanted repaired did CESI become involved in the repair (SMF 17). CESI needed permission from US/GSA in order to perform the repair of the leak that was present in Manhole 42 on September 11, 2004 (SMF 18).

The HOTD/SDC Contract contains an Insurance Requirement which provided that,

> "*[t]he Contractor shall provide insurance coverage for all risks associated with performing this Contract and its Task Orders*. The Contractor assumes full liability and responsibility for all losses and damages to property or injuries to persons *occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractor's employees and agents*. At its own expense, the Contractor must maintain adequate insurance coverages during the life of this contract against all claims for damages and/or injuries. The Contractor shall maintain any legally required insurance with respect to its employees and agents. The Government shall be indemnified and saved harmless against claims for damages and/or injuries. Liability insurance coverages, written on the comprehensive form of policy, are required in the following minimum amounts. . ."

(SMF 19) (emphasis added).

3

Another section of the HOTD/SDC Contract emphasized that CESI was responsible for damages that may result from its work (SMF 20). The HOTD/SDC Contract holds CESI responsible only for damages resulting from its own negligence or from its own work, and not for damages resulting from US/GSA's negligence or US/GSA's work (SMF 21).

## II.    LAW AND ARGUMENT

### A.    Standard for Granting Summary Judgment

Summary judgment is properly entered, under Federal Rule of Civil Procedure 56, if the evidence before the Court establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists only if a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Only disputes that may affect the outcome of the case are considered material. Id. at 248.

The moving party has the initial burden to show the absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The non-moving party may not rest upon mere denials but must demonstrate that a triable issue of fact exists. Anderson, 477 U.S. at 248. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at

249-50 (citations omitted). Moreover, unsupported speculation is insufficient to defeat a motion for summary judgment. <u>Brown v. Brody</u>, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

Under <u>Celotex</u>, a court must enter summary judgment against a non-movant "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Frito-Lay, Inc. v. Willoughby</u>, 863 F.2d 1029, 1032 (D.C. Cir. 1988) (quoting <u>Celotex</u>, 477 U.S. at 322). The Court in <u>Celotex</u> found that

> [T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to "judgment as a matter of law" because the nonmoving party has *failed to make a sufficient showing on an essential element of her case* with respect to which she has the burden of proof.

<u>Celotex</u>, 477 U.S. at 322-23 (emphasis added) (quoting <u>Anderson</u>, 477 U.S. at 250).

Applying these standards, summary judgment should be granted in favor of CESI.

### B. The Insurance Requirement Contained in the HOTD/SDC Contract Does Not Provide for CESI's Indemnification of US/GSA for US/GSA's Own Negligence.

The HOTD/SDC Contract does not require CESI to indemnify US/GSA for US/GSA's own negligent acts. Courts must apply federal law in interpreting contracts between the federal government and a government contractor. <u>See</u> <u>U.S. v. Seckinger</u>, 397 U.S. 203, 209, <u>reh'g denied</u> 397 U.S. 1031 (1970). Further, a contract drafted by the United States should be construed most strongly against the United States. <u>Id.</u> at 210.

According to federal law, indemnification by a government contractor for the government's own negligence "must be **clearly and unequivocally** indicated as the

intention of the parties . . . ." <u>Id.</u> at 215. "[A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." <u>Id.</u> at 211. Moreover, courts are typically reluctant "to cast burden of negligence actions on those who were not actually at fault", particularly in "a situation in which there is vast disparity in bargaining power and economic resources between parties, such as exists between the United States and particular government contractors." <u>Id.</u> at 212. In this case involving the HOTD/SDC Contract, there is no such clear or unequivocal intent for CESI to indemnify US/GSA for US/GSA's own negligence, and the court should not permit US/GSA to seek indemnification for its own negligence in this instance.

The Supreme Court has held that a contract clause stating that the private contractor "**shall be responsible for all damages** to persons or property that occur as a result of his fault or negligence" **did not** indemnify the government for the government's own negligence. <u>U.S. v. Seckinger</u>, 397 U.S. at 204 (emphasis added). In reaching that decision, the Court rejected the argument that the clause would simply trigger indemnification by the contractor for all damages, including that which was caused by the government's negligence. <u>Id.</u> at 212-13. The Court was not "firmly convinced" that was the intention of both parties to the contract. <u>See id.</u> at 211. Simply put, the government cannot rely on ambiguous language to suggest it is indemnified for its own negligence. And where there are "two reasonable and practical constructions of an ambiguous contractual provision . . . the provision should be construed less favorably to that party which selected the contractual language." <u>See id.</u> at 216. In this case, US/GSA selected the language for the HOTD/SDC Contract.

The Insurance Requirement section applicable in the case at bar is not clear and unequivocal. CESI personnel understood that they were liable for damages due to their own negligence or due to their own work, not for the government's negligence (SMF 21).

There are cases where a contract does provide for indemnification for the indemnitee's negligence. However, unlike the clause in this case, such contract clauses are clear. For example, the Second Circuit held the following indemnification provision was sufficiently "clear and unequivocal" so as to require indemnification by the contractor for the government's own negligence:

> **The Contractor shall save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims,** loss, damage, actions, causes of action, expense and/or liability resulting from, brought for, or on account of any personal injury or property damage received or sustained by any person, persons, or property growing out of, occurring, or attributable to any work performed under or related to this contract, **regardless of whether such claims, loss, damage, actions, cause of actions, expense and/or liability may be attributable to the fault, failure, or negligence of the Contractor.**

Gibbs v. U.S., 599 F.2d 36, 40 (2d Cir. 1979) (emphasis added). The court emphasized that this language explicitly stated that liability for indemnity existed "**regardless of whether such claims . . . may be attributed to the fault, failure, or negligence of the contractor.**" See id. (emphasis added).[1]

A plain reading of Section H.8.A of the Contract (the "Insurance Requirement") directs that CESI is liable only for damages caused by the negligence of its own

---

[1] In certain circumstances, even this language may not be sufficient to indemnify the United States for its own negligence. Rather, the language properly may be interpreted as requiring the contractor to indemnify the United States for fault, failure and negligence of the contractor and third parties, but not of the United States.

employees and agents and that CESI will indemnify the Government against claims

arising only from CESI's negligence. The Insurance Requirement states, in relevant part:

> *[t]he Contractor shall provide insurance coverage for all*
> *risks associated with performing this Contract and its*
> *Task Orders*. The Contractor assumes full liability and
> responsibility for all losses and damages to property or
> injuries to persons *occasioned through the performance of*
> *any services or the use, maintenance and operation of*
> *equipment and vehicles by the Contractor's employees*
> *and agents*. At its own expense, the Contractor must
> maintain adequate insurance coverages during the life of
> this contract against all claims for damages and/or injuries.
> The Contractor shall maintain any legally required
> insurance with respect to its employees and agents. The
> Government shall be indemnified and saved harmless
> against claims for damages and/or injuries. Liability
> insurance coverages, written on the comprehensive form of
> policy, are required in the following minimum amounts . . .

(See SMF 19).

The Insurance Requirement clearly states that CESI "assumes full liability and

responsibility for all losses and damages . . . occasioned through the performance of any

services . . . by the Contractor's employees and agents" (See SMF 19). The same clause

states "[t]he Government shall be indemnified and saved harmless against claims for

damages and/or injuries" (See id.). That phrase, however, must be read in the context of

the entire clause pursuant to the canons of contract construction. See Kay v. Cain, 154

F.2d 305 (D.D.C. 1946) (interpreting a lease and stating that "general words like 'any

cause' and 'other cause' are held to refer only to causes which have some resemblance to

the particular ones specified in the context."). Moreover, this one sentence is not under

an "indemnification" section; the language is in a section entitled "Insurance

Requirement". The contract language is not clear and unequivocal and is rightly

construed against US/GSA. Furthermore:

> If the Government wants to impose additional liabilities
> upon those with whom it contracts to do its work, I would
> require it to do so openly, so that every bidder may clearly
> know the extent of his potential liability. Even in the
> domain of private contract law, the author of a standard-
> form agreement is required to state its terms with clarity
> and candor. Surely no less is required of the United States
> of America when it does business with its citizens . . .

Seckinger, 397 U.S. at 221 (Stewart, J., along with the Chief Justice and Douglas, J.,

dissenting).

On the face of the HOTD/SDC Contract, there is no language that shows that the

parties intended for CESI to be responsible for US/GSA's negligence. Instead, the

HOTD/SDC Contract imposes liability on CESI only for the acts of its "employees and

agents" (SMF 19). If the parties had intended for CESI to be responsible for the acts of

GSA's employees and agents, they would have and should have written that in to the

Contract. "The Government knows how to write an indemnification or contribution

clause when that is what it wants." Id. at 222. Here, they did not do so. Any attempt by

US/GSA to read such an onerous provision in to the contract should be rejected.

Where the parties have expressed their clear intent, that interpretation will prevail.

See U.S. v. Seckinger, 397 U.S. at 212. Nowhere in the HOTD/SDC Contract does it

state that CESI assumed liability for damages caused by the negligence of GSA.

Nowhere does the HOTD/SDC Contract state CESI is liable "regardless" of its own

liability. Nowhere does the HOTD/SDC Contract state that CESI is liable for any and all

liability resulting "in whole or in part" for US/GSA's own negligence, or for that matter

"in whole or in part" for CESI's negligence.

Courts construing similar language in contracts between the federal government and private contractors have agreed that such language does not indemnify the indemnitee for its own negligence. For instance, this Court, in <u>District of Columbia v. C. F. & B, Inc.</u>, held the following indemnification language insufficient to indemnify the District of Columbia for its own negligence:

> **[The Principal] shall save harmless and indemnify the government from any and all claims**, delays, suits, costs, charges, damages, counsel fees, judgment, and decrees to which said government may be subjected at any time . . . on account of any injuries to persons or damage to property or premises that occur **as a result of any act or omission of the Principal in connection with the prosecution of the work** . . .

<u>See</u> 442 F. Supp. 251, 254 (D.D.C. 1977) (finding that according to the analysis of <u>United States v. Seckinger</u> the indemnification provision did not indemnify the District for its own negligence) (emphasis added); <u>see also</u> <u>U.S. v. English</u>, 521 F.2d 63, 67 (9th Cir. 1975) (interpreting language that the contractor "shall be similarly responsible for all damages . . . that occur as a result of his fault of [sic] negligence" and "[t]he Contractor shall hold and save the government . . . free and harmless from liability of any nature occasioned by His [sic] operations" insufficient to indemnify the government for its own negligence). Indeed, according to the Supreme Court in <u>Seckinger</u>, the terms "hold harmless" or "indemnify" have no "talismanic significance", but only serve as an indicia of the parties' intention. <u>See</u> <u>Seckinger</u>, 297 U.S. at 212 n.17. And as acknowledged by this Court's own holding, the presence of those terms are not dispositive. Practically speaking, interpreting the insurance requirement clause to mean that CESI is required to indemnify US/GSA for US/GSA's own negligence would cause an absurd result. Pursuant to the HOTD/SDC Contract, US/GSA retained significant control over the

system and the services to be provided by CESI, including the full ability to operate the system and to direct the physical performance by CESI. Importantly, the HOTD/SDC Contract provided that there were US/GSA personnel assigned to "directly" supervise the work of the contract (SMF 9). Furthermore, through the contract, US/GSA proscribed specific checklists and procedures for CESI to use for the actual physical performance of preventative maintenance inspections. For example, the checklist for inspecting the expansion joints specifically describes the activity to be done as follows:

1.    Remove cover.
2.    Examine joint closely, look for evidence of displacement, loose or defective anchors or bolts, alignment of joint with piping, guide rods, etc. Correct what can be done with pressure on. Repair or replace as necessary.
3.    Clean barrel with fine sand cloth to remove as much rust and debris as possible.
4.    Lubricate barrel.
5.    Observe packing gland, [a]djust [sic] to stop weeping or leaks.
6.    If slugs are added, remember to return the slugging ran all the way down inside the barrel after completion.
7.    Renew packing completely when system is down for other reason such as repair, overhaul, or maintenance of other components.
8.    Replace cover.

(See SMF 10, Exhibit A, Part III, Section J, Exhibit 2, Checklist, p. 80). The checklists show that US/GSA dictated how the work of CESI was to be performed.

CESI did not have the ability to shut down the system or do any repairs that exceeded $1,000.00. For example, CESI might find that a particular repair needed to be done on a high priority and that its cost was $2,000.00. CESI would then be required to request approval from US/GSA to perform the repair. Then, US/GSA could flat out

refuse to approve the repair and overrule the priority of the repair. If any injury resulted from the failure to timely do that repair, US/GSA would certainly argue that CESI should be responsible and should indemnify US/GSA for US/GSA's failure to approve or timely schedule the repair. This is simply not the intended result of the HOTD/SDC contract language. Another example might be in the instance where US/GSA personnel might be present in a manhole turning the steam back on to a line. If US/GSA personnel turned the steam on too quickly and the steam line burst and injured a third-party, US/GSA cannot possibly expect that a contractor would willingly assume that kind of liability by way of indemnity. However, according to the interpretation US/GSA might urge in this case, such an unfair result would occur.[2]

CESI did not intend and did not agree to be an insurer of the entire system, knowing that it had little effective control with repairs over a rather low cost threshold, that it could not operate or turn on or off the system, and that it had to perform work in accordance with specific direction as to the physical work to be done.

## III.    CONCLUSION

As a matter of law, defendants/cross-claim plaintiffs United States of America and General Services Administration cannot prevail on any claim for indemnity and contribution for their own negligence from defendant/cross-claim defendant Consolidated Engineering Services, Inc., and CESI is entitled to judgment as a matter of law on this issue.

---

[2] Furthermore, the government's interpretation would make the Federal Tort Claims Act a nullity, since the act provides that the government consents to being sued for its negligence and for contribution as a joint tortfeasor. See U.S. v. Yellow Cab Co., 340 U.S. 543, 544 (1951).

WHEREFORE, for the reasons stated in this Motion, the Statement of Material Facts, and the Memorandum of Points and Authorities in Support of the Motion, Consolidated Engineering Services, Inc. respectfully requests that this Honorable Court grant partial Summary Judgment in its favor on US/GSA's cross-claim against CESI for indemnity and contribution to the extent any judgment may be rendered in favor of plaintiff Natalie Hsieh and/or plaintiff Matthew Hsieh against US/GSA for any negligence of US/GSA.  CESI further requests an award of its costs and attorneys' fees and such other relief as the Court deems proper.

**CONSOLIDATED ENGINEERING SERVICES, INC.**

By:    /s/ David D. Hudgins
        David D. Hudgins (D.C. Bar # 362451)
        HUDGINS LAW FIRM, P.C.
        515 King Street, Suite 400
        Alexandria, VA 22314
        Tel:  (703) 739-3300
        Fax: (703) 739-3700
        *Counsel for Consolidated Engineering Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 7th day of September 2007 to:

Karen L. Melnik
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
*Counsel for Federal Defendants*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day & Zimmerman Services, Inc.*

Robert B. Adams
Timothy R. Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA 22102
*Counsel for Plaintiffs*

/s/ David D. Hudgins
David D. Hudgins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIE T. HSIEH, et al.,                )
                                          )
       Plaintiffs,                        )
                                          )
v.                                        )
                                          )
UNITED STATES OF AMERICA, et al.,        )
                                          )
       Defendants.                        )
                                          )
_____ )
CONSOLIDATED ENGINEERING                  )
SERVICES, INC., defendant and             )
third-party plaintiff,                    )
                                          )
v.                                        )
                                          )
DAY & ZIMMERMAN                           )
SERVICES, INC., third-party defendant.    )
                                          )
_____ )

Civil Action No. 1:06-cv-01218
        (CKK/JMF)

Next event:     **September 7, 2007**
                **Dispositive Motions**
                **Deadline**

## ORDER

UPON CONSIDERATION of defendant/cross-claim defendant Consolidated Engineering Services, Inc.'s Motion for Partial Summary Judgment against defendants/cross-claim plaintiffs United States of America and General Services Administration upon defendants/cross-claim plaintiffs United States of America and General Services Administration's cross-claim against defendant/cross-claim defendant Consolidated Engineering Services, Inc. for indemnity and contribution; and the submissions filed, along with the entire record herein; and [the lack of] any opposition to the motion; it is hereby

1

ORDERED that defendant/cross-claim defendant Consolidated Engineering Services, Inc.'s Motion for Partial Summary Judgment against defendants/cross-claim plaintiffs United States of America and General Services Administration is GRANTED; and it is further

ORDERED that defendant/cross-claim defendant Consolidated Engineering Services, Inc. is granted judgment in its favor, and the United States of America and General Services Administration shall not obtain indemnity and contribution from Consolidated Engineering Services, Inc. for any judgment in favor of plaintiff Natalie Hsieh and/or in favor of plaintiff Matthew Hsieh against the United States of America and General Services Administration to the extent any judgment is based upon a finding of negligence of the United States of America or General Services Administration.

 

Colleen Kollar-Kotelly
United States District Judge

cc:

David D. Hudgins (D.C. Bar # 362451)
Hudgins Law Firm, P.C.
515 King Street, Suite 400
Alexandria, VA  22314

Karen L. Melnik (D.C. Bar # 436452)
Assistant United States Attorney
555  4th Street, NW, Rm. E 4112
Washington, DC  20530

Robert B. Adams
Timothy R. Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA  22102

Mary Malloy Dimaio (D.C. Bar # 464100)
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204