UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIE T. HSIEH, et al.,

Plaintiffs,

v.                              Civil Action No: 1:06-cv-01218
(CKK)

CONSOLIDATED ENGINEERING
SERVICES, INC., et. al.,

Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MATTHEW'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**FACTUAL BACKGROUND**

On September 11, 2004 Matthew Hsieh was properly on the public sidewalk adjacent to the Hoover FBI Building located at 10th Street and Pennsylvania Avenue, NW in the District Of Columbia sightseeing with a friend and pushing his three year old daughter Natalie in a stroller.

After taking a photograph of his friend with the FBI Building in the background he pushed the stroller in which his daughter was situated over a grate in the sidewalk from which what he believed were innocuous vapors were being emitted.

As a direct result of coming into contact with the vapors that were being emitted from the grate in the public walkway, both he and his daughter suffered severe burns that required medical treatment.

-2-

No warning of any kind was provided to him that the vapors that burned him and his young daughter were harmful or potentially harmful to them.

**ARGUMENT**

The plaintiff does not dispute that his individual claim for damages is barred if it is determined by the Court or by the trier of fact that he was contributorily negligent in causing his injuries, but denies that he was negligent in the circumstances presented herein.

In this regard Standardized Civil Jury Instruction For The District of Columbia 5-2 defines negligence as "the failure to exercise ordinary care.  To exercise ordinary care means to use the same caution, attention or skill that a reasonable person would use under similar circumstances...."

Standardized Jury Instruction 5-3 states in pertinent part that "(n)egligence is a relative concept.  A reasonable person changes his conduct according to the circumstances or according to the danger that he knows or should know, exists...."

Instruction 5-4 states in pertinent part that "(t)o exercise ordinary care, a person does not have to act with extreme caution or exceptional skill.  While we admire and encourage persons to exercise exceptional skill or caution, the

-3-

law does not require it as a general standard of conduct. ..."

In the instant matter, as will be shown below, it is unquestionable that the plaintiff, who is a medical doctor who is Board Certified in Internal Medicine and Hematology, was neither aware nor should have been aware that he was putting himself and his young daughter in jeopardy by walking over a grate in the public thoroughfare on a pleasant weekend day.  He had no reason to believe either from the circumstances presented that day or from past experience that to do so was potentially harmful for either of them.  He was afforded no warning that such would or could be the case.

In this regard the following exchange took place between Dr. Hsieh and defense counsel at his discovery deposition in the case. Exhibit 1 (Deposition of Matthew Hsieh).

Q. When you approached the steam grate, did you recall having a sensation that the steam coming from the grate was hot?

A. No.

Q. Did you feel any intensity of heat or rise in temperature as you approached the steam grate?

A. No.

Q. As you, yourself, walked over the steam grate, did you experience a significantly hotter temperature than before you had walked across the steam grate?

A.  Meaning Afterwards?

-4-

Q. As you were walking across it?

A. When the emissions touched my skin, I thought this was warmer
that what I have actually experienced.

Q. Okay, But it wasn't, like, ouch and you ran, nothing like
that?

A. No, but I do remember that it felt like there was, sort of,
low-grade burning immediately after and sort of, you know,
staying after....

Q. Do you recall whether the steam coming out was ... and I will
use the word wafting, meaning like a vapor blowing back and
forth with the breeze, or was it shooting up in the air?  How
was it?

A. That day didn't have a lot of wind, and I didn't think too
much of these emissions that were coming out.

Q. It wasn't like it was really pouring out of there?  Is that a
fair statement?

A. Not to me, no.

Q. And I think, from what you're telling me, it appeared to be
like you had seen in the past, kind of like a misty vapor type
of emission?

A. Yes.

Q. Had you ever been to that location prior to that date,
specifically to that location?

A. No.

-5-

Q. What were you wearing that day?

A. A T-shirt and a pair of shorts.... Exhibit 2, pages 41-43.
Exhibit 2, pages 41 and 42.

Testimony has also been offered by FBI Police Officer
Louis Burton, whose job it was on the date of the incident that
is involved in this litigation to protect the FBI buildings,
grounds and the immediate area. See Exhibit 2. (Deposition of
Louis Burton) at page 6.  Officer Burton testified that September
11, 2004 was a sunny Saturday and that at the time there were a
lot of tourists in the area.  Exhibit 1 at page 7.

The following colloquy took place between plaintiff's
counsel and Officer Burton at pages 12 - 14 of Exhibit 1:

Q. Did you go to the area where it appeared she'd been burned?

A. Yes, I did.

Q. What did you see when you went there?

A. Well, as usual, the steam was coming out of the grate, the
   sidewalk.  It seemed like that day was extra hot....

Q. How frequently before that day, how frequently did you see
   what appeared to be steam or smoke coming out of the grate?

A. Every day.

Q. Did it generally look the same?

A. It looked the same, yeah.

Q. This is when it's warm or cold, whatever?

A. Yes...

-6-

Q. To your knowledge had anybody been injured at that location
   before?

A. No.

Q. Did you see people walk through the steam?

A. Oh, yes.  Like on weekends when there's a lot of tourists in
   the area, kids either flock to the pigeons, try to chase the
   pigeons away ... or they go straight to the steam and stand in
   the steam and play like they're an angel or something.

Q. So its quite common for people to go through?

A. Yes.

Q. Even if they're not seeking it out, kids tend to seek it out?

A. Yes.

Q. Was here any impediment to get to the grate?

A. No.

Q. Did you folks, the police officers, ever complain about that?

A. No.  We park our cruisers next to the steam, and the glass
   gets foggy, but no one's complained."

        Given the testimony of the plaintiff and of Officer
Burton concerning the appearance of the vapors in question in the
circumstances presented herein, it cannot fairly be held, as a
matter of law, that Matthew Hsieh was put on notice of a
dangerous or potentially dangerous condition posed by the vapors
that he noticed coming from the sidewalk grate and that by
walking over the grate he acted without exercising ordinary care

-7-

for his own safety and for the safety of his daughter.  Whether or not he was contributorily negligent in the circumstances presented is properly for the jury, as the trier of fact, to determine.

Dr. Hsieh respectfully submits that the Court opinions that the defendants cite in their Motion For Summary Judgment are not authority for the proposition for which they are offered.  In each case the plaintiff either voluntarily confronted a known danger or otherwise acted with a sense of disregard for his or her own safety.  That simply was not the case with Matthew Hsieh on September 11, 2004 when he acted as he did having no reason to believe that he was putting himself or his daughter in a position of peril.

For the reasons set forth above, Matthew Hsieh respectfully requests that the Court deny the defendants' Motion For Summary Judgment.

MATTHEW M. HSIEH
By counsel

GAMMON & GRANGE, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102
(703) 761-5000

/s/ Robert B. Adams
_____
Robert B. Adams (D.C. Bar No. 189159)
Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIE T. HSIEH, et al.,

                    Plaintiffs.

v.                              Civil Action No: 1:06-cv-01218
                                        (CKK)

CONSOLIDATED ENGINEERING
SERVICES, INC., et. al.

                    Defendants.

**ORDER**

         UPON CONSIDERATION of Defendants Motion For Summary

Judgment against Plaintiff Matthew Hsieh upon Hsieh's Complaint

against Defendants; and the submissions filed, along with the

entire record herein; it is hereby

         ORDERED that defendants' Motion For Summary Judgment

against Plaintiff Matthew Hsieh is DENIED.


                              _____
                              Colleen Kollar-Kotelly
                              United States Judge

cc:

David D. Hudgins (DC Bar #: 362451)
Hudgins Law Firm, P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314

Karen L. Melnik (DC Bar #: 436452)
Assistant U.S. Attorney
555 4th Street, NW, Room E 4112
Washington, DC 20530

-2-

Robert B. Adams (DC Bar #: 189159)
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102

Mary Malloy Dimaio (DC Bar #: 464100)
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, Maryland 21204