## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **NATALIE T. HSIEH, et al.,** )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**UNITED STATES OF AMERICA, et al.,** )<br><br>**Defendants.** )<br><br>**CONSOLIDATED ENGINEERING**<br>**SERVICES, INC., defendant and**<br>**third-party plaintiff,** )<br><br>**v.** )<br><br>**DAY & ZIMMERMAN**<br>**SERVICES, INC., third-party defendant.** ) | **Civil Action No. 1:06-cv-01218**<br>**(CKK/JMF)**<br><br>**Next event:  November 12, 2007**<br>**Dispositive Motions**<br>**Oppositions Deadline** |

### CONSOLIDATED ENGINEERING SERVICES, INC'S OPPOSITION TO UNITED STATES OF AMERICA'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Consolidated Engineering Services, Inc. ("CESI"), by counsel, hereby files its Opposition to the United States Motion to Dismiss or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 and Local Rule 7(h) (LCvR 7(h)), along with its Statement of Facts in Genuine Issue, Memorandum in Opposition, Exhibits, and proposed Order. CESI also adopts and incorporates by reference herein its by reference herein its Motion for Summary Judgment against US/GSA, including the Motion, Statement of Facts, Memorandum in Support, and Exhibits.

WHEREFORE, for the reasons stated in this Opposition, the Statement of Material Facts, and the Memorandum of Points and Authorities in Support, CESI respectfully requests that this Honorable Court deny the United States' Motion, award CESI its costs, and order such other relief as the Court deems proper.

**CESI RESPECTFULLY REQUESTS ORAL ARGUMENT ON THE MOTION.**

**CONSOLIDATED ENGINEERING SERVICES, INC.**

By:    /s/ David D. Hudgins
David D. Hudgins (D.C. Bar # 362451)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, VA 22314
Tel: (703) 739-3300
Fax: (703) 739-3700
*Counsel for Consolidated Engineering Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 12th day of November 2007 to:

Karen L. Melnik
Assistant United States Attorney
555  4th Street, NW
Washington, DC  20530
*Counsel for Federal Defendants*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day & Zimmerman Services, Inc.*

Robert B. Adams
Timothy Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA  22102
*Counsel for Plaintiffs*

/s/ David D. Hudgins
David D. Hudgins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATALIE T. HSIEH, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 1:06-cv-01218 |
| ) | (CKK/JMF) |
| v. ) | |
| ) | Next event:  November 12, 2007 |
| UNITED STATES OF AMERICA, et al., ) | Dispositive Motions |
| ) | Oppositions Deadline |
| Defendants. ) | |
| ) | |
| ) | |
| CONSOLIDATED ENGINEERING ) | |
| SERVICES, INC., defendant and ) | |
| third-party plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DAY & ZIMMERMAN ) | |
| SERVICES, INC., third-party defendant. ) | |
| ) | |
| ) | |

**CONSOLIDATED ENGINEERING SERVICES, INC'S
LCvR 7(h) STATEMENT OF FACTS IN GENUINE ISSUE
IN OPPOSITION TO UNITED STATES OF AMERICA'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Consolidated Engineering Services, Inc. ("CESI"), by counsel, pursuant to LCvR

7(h), and in Opposition to United States of America's Motion to Dismiss or Motion for

Summary Judgment, states that below are the material facts to which CESI contends there

exist genuine issues necessary to be litigated. CESI has filed its own Motion seeking

partial summary judgment in its favor on the cross-claim of the United States and the

General Services Administration ("US/GSA") against CESI to the extent the US/GSA

seeks indemnity and contribution for its own negligence. CESI adopts and incorporates

1

by reference herein all of the numbered paragraphs in its Statement of Material Facts as to Which There Is No Genuine Issue and the Exhibits (labeled A through J) filed in support of its Motion for Summary Judgment against the US/GSA. In this Statement of Facts in Genuine Issue in Opposition ("SOF Opposition"), CESI uses the same Exhibits from its Motion for Summary Judgment and adds additional Exhibits, which are attached hereto and labeled Exhibits K to N.

1.     Admitted.

2.     Admitted, except that the term "contracts" as used in the US/GSA's statement of facts should be "contract" in the singular (See Exhibit K attached hereto, Novation Agreement, p. 2 at ¶¶ 2 and 3).

3.     Denied. The original base contract concerning the Heating Operation and Transmission District Steam Distribution Complex ("HOTD/SDC Contract") was the effective contract between CESI and US/GSA at all times relevant; the only modifications made to the contract were the effective dates and some wage changes, per the Amendments of Solicitation/Modifications of Contract effective March 1, 2003 and effective March 1, 2004, and the Novation effective August 30, 2004 (See Exhibit A to CESI's Motion for Summary Judgment against US/GSA, the "HOTD/SDC Contract", Contract No. GS-11P-01-YMC-0085; Exhibit B, Amendment of Solicitation effective March 1, 2003; Exhibit C, Amendment of Solicitation effective March 1, 2004; Exhibit D Amendment of Solicitation/Modification of Contract effective August 30, 2004). The HOTD/SDC Contract actually stated that "the Contractor shall provide all labor, supervision, vehicles, equipment, and materials to perform inspections, preventative maintenance, repairs, and general housekeeping for the entire Heating Operation and

Transmission District (HOTD) Steam Distribution Complex (SDC)"(See Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract, Pt. I, Section C (General), p. 17, ¶ 1).

4.    Denied.  The Contract stated that CESI was "responsible for the day-to-day inspection and monitoring of all Contractor work performed to ensure compliance with contract requirements" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract, Pt I, Section E.1, p. 29, ¶ 1).

5.    Denied.  The Contract stated that CESI was to assign a "full-time project manager" to the project, who would be "fully responsible for administering personnel, directing work, and interfacing with the Government" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract, Pt I, Section C (General), p. 17, ¶ 2).

6.    Denied. The Government, through US/GSA, had direct supervision over the work of the contractor. The HOTD/SDC Contract provided that, "The staff of Government employees at GSA HOTD who are specifically dedicated to *direct supervision and execution of Steam Distribution Complex maintenance and repair work*, and to facilitation and quality assurance of contractor maintenance and repair work in the Steam Distribution Complex, comprises of [certain Government employees]" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part III, Section J, Exhibit 1, p. 79, ¶ 1 after bullets) (emphasis added).  Furthermore, pursuant to the HOTD/SDC Contract, CESI had to perform work in accordance with specific instructions from the US/GSA. "The Contractor shall perform preventative maintenance on all equipment in accordance with Government checklists" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part I, Section C.1.B, p. 18).  The Preventive

3

Maintenance Checklists "define the procedures for inspecting components located in the Steam Distribution Complex" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part III, Section J, Exhibit 2, p. 80; Exhibit A, Part III, Section J, Exhibit 2, Checklists, p. 80-89). The HOTD/SDC Contract stated that, "The Contractor shall confirm these procedures [for inspecting components] when performing preventive maintenance inspections" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part III, Section J, Exhibit 2, p. 80, ¶ 1). See also CESI's Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment against US/GSA at ¶¶ 11-18 concerning the activity and control of the US/GSA pursuant to the HOTD/SDC Contract.

7.    Denied, except to admit that the HOTD/SDC Contract stated that "Most of the work of this Contract requires the Contractor to work in and around public streets and sidewalk in the District of Columbia. The Contractor shall comply with all Federally and locally mandated safety requirements, and shall cooperate with Federal and local officials that enforce these requirements. The Contractor shall protect Government personnel and the public from any hazards *that may result from its work*, including excavations, open manholes, noxious fumes, open flames, and steam and condensate discharges" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract, Pt. I, Section C, Conditions of Performance, 3, p. 22) (emphasis added). See also CESI's Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment against US/GSA at ¶ 20.

8.    Denied. The HOTD/SDC Contract contained an Insurance Requirement which provided that, "*[t]he Contractor shall provide insurance coverage for all risks*

*associated with performing this Contract and its Task Orders*. The Contractor assumes full liability and responsibility for all losses and damages to property or injuries to persons *occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractor's employees and agents*. At its own expense, the Contractor must maintain adequate insurance coverages during the life of this contract against all claims for damages and/or injuries. The Contractor shall maintain any legally required insurance with respect to its employees and agents. The Government shall be indemnified and saved harmless against claims for damages and/or injuries. Liability insurance coverages, written on the comprehensive form of policy, are required in the following minimum amounts . . ." (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Pt. I, Section H.8.A, p. 41) (emphasis added).

9.      Denied. The HOTD/SDC Contract contained an Insurance Requirement which provided that, "*[t]he Contractor shall provide insurance coverage for all risks associated with performing this Contract and its Task Orders*. The Contractor assumes full liability and responsibility for all losses and damages to property or injuries to persons *occasioned through the performance of any services or the use, maintenance and operation of equipment and vehicles by the Contractor's employees and agents*. At its own expense, the Contractor must maintain adequate insurance coverages during the life of this contract against all claims for damages and/or injuries. The Contractor shall maintain any legally required insurance with respect to its employees and agents. The Government shall be indemnified and saved harmless against claims for damages and/or injuries. Liability insurance coverages, written on the comprehensive form of policy, are

required in the following minimum amounts . . ." (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Pt. I, Section H.8.A, p. 41) (emphasis added).

    10.    Admitted.

    11.    Denied.  CESI regularly reported to US/GSA as to its work and inspection by using written forms and entries into the government's computerized database, including CESI's reports of work on September 7 and 9, 2004, "no later than two (2) working days after the action item is identified, or the work item is completed."  (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Pt. I, Section C.1.D, p. 19).

    12.    Denied.    Although CESI contends there were no recurrent water infiltration problems with Manhole 42 that would have put CESI on notice of a potentially hazardous condition, if CESI, or the prior contractor D&Z, had knowledge of any water infiltration problems, such knowledge was reported to US/GSA through the reporting requirements.  (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Pt. I, Section C.1.D, p. 19).

    13.    Admitted.

    14.    Admitted.

    15.    Admitted.

    16.    Admitted.

    17.    Admitted.

    18.    Admitted.

19.    Admitted, except that when Mr. Matkins arrived, there may have already been a temporary barrier placed by FBI police.  (Exhibit L attached hereto, Deposition of Richard Matkins, p. 53 ln. 19 – p. 54, ln. 5).

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Denied, except to admit that CESI's subcontractor did the work described pursuant to instructions from GSA employee Joseph Lambright to CESI employee Joseph Michael Glock.  Lambright brought CESI employee Glock down into Manhole 42 and showed Mike Glock where there was a leak that needed to be repaired by CESI (Exhibit I to CESI's Motion for Summary Judgment against US/GSA, Deposition of Joseph Lambright p. 31; see also CESI's Statement of Material Facts in Support of its Motion for Summary Judgment against US/GSA at ¶¶ 16-18).

26.    Denied.  Joseph Michael Glock gave instructions pursuant to instructions from GSA employee Joseph Lambright.  Lambright brought CESI employee Glock down into Manhole 42 and showed Mike Glock where there was a leak that needed to be repaired by CESI (Exhibit I, Deposition of Joseph Lambright p. 31; see also CESI's Statement of Material Facts in Support of its Motion for Summary Judgment against US/GSA as ¶¶ 16-18).

27.    Admitted.

28.    Denied. The Government, through US/GSA, had direct supervision over the work of the contractor. The HOTD/SDC Contract provided that, "The staff of Government employees at GSA HOTD who are specifically dedicated to *direct supervision and execution of Steam Distribution Complex maintenance and repair work*, and to facilitation and quality assurance of contractor maintenance and repair work in the Steam Distribution Complex, comprises of [certain Government employees]" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part III, Section J, Exhibit 1, p. 79, ¶ 1 after bullets) (emphasis added).  (See also CESI's Statement of Material Facts in Support of its Motion for Summary Judgment against US/GSA at ¶¶ 11-18 concerning the activity and control of the US/GSA pursuant to the HOTD/SDC Contract).    Furthermore, the prior contractor Day & Zimmerman Services, Inc.'s representative testified that GSA directed the work of the contractor stating that, "GSA had come up with their own automated work order system and basically they used their work order system to assign us work and which is opposed to the mission orders that we thought we had when we bid on the contract.  So we really did what GSA told us . . ." and the mission orders were to, "go maintain and repair it," but instead GSA said "you go and replace valve 123 and then you check valve 87 and then you pump out this manhole. So we really weren't – we weren't given basically work management responsibility as we had thought." (Exhibit M attached hereto, Deposition of Daniel McDonald, p. 19, ln. 1 – p. 20, ln. 3).

29.    CESI adopts and incorporates by reference all of the numbered paragraphs in its Statement of Material Facts as to Which There Is No Genuine Issue filed in support of its Motion for Summary Judgment against the US/GSA.

30.    There is a genuine issue as to the cause of the steam/emissions that allegedly came out through the steam grate and burned plaintiffs Matthew Hsieh and his daughter ("Plaintiffs"), and as to who had responsibility for such cause(s).  Without conceding that the US has alleged any undisputed fact with regard to cause since the US makes no Statement of Material Fact on that issue, without conceding that there was any negligence whatsoever on the part of CESI or the US or GSA, and without conceding the validity of Plaintiffs' expert's opinions, CESI notes that the US ignores the facts and scope of the HOTD/SDC Contract and also ignores Plaintiffs' expert who testified that there were multiple causes of the Plaintiffs' alleged injuries.  Plaintiffs' expert Larry D. Smith testified as to several of the alleged causes, some of which were under the control of the US/GSA, not CESI, such as the design of the system and the need to approve additional work to the system.  (Exhibit N attached hereto, Deposition of plaintiffs' expert Larry D. Smith, p. 23, 24, 30, 33, 34, 60).  For example, Plaintiffs' expert opined that the system should have been designed so that even if there was a leak in the steam pipes, steam from the pipes could not come up through steam grates or manhole covers. (Exhibit N, Smith, p. 33, ln. 3 – p. 34, ln. 11).  Further, Plaintiff's expert opined that the manholes could have had water level alarms, sump pumps, and waterproofing of the vaults to prevent water intrusion and flooding of the manholes (Exhibit N, Smith, p. 60, ln. 5-13).  However, such measures were capital improvements that were outside the basic scope of the HOTD/SDC Contract (See generally Exhibit A to CESI's Motion for Summary Judgment against US/GSA; and see Exhibit A, Part III, Section J, Exhibit 1, p. 79, ¶ 5).  Plaintiffs' expert also claimed that after a flooding in a manhole that reached the level of the steam pipes, the manhole should be inspected with ultrasound or MRI to

detect any leaks (Exhibit N, Smith, p. 23, ln 13 – p. 24, ln 8), but Plaintiff's expert also opined that such a measure would have to be authorized by GSA and that CESI (or any other contractor) could not have done such examinations on its own (Exhibit N, Smith, p. 30, ln. 12-20).

31.    Moreover, US/GSA dictated in the HOTD/SDC Contract how the equipment was to be physically inspected and how often the equipment was to be inspected by CESI. (See CESI's Statement of Material Facts in Support of its Motion for Summary Judgment against US/GSA at ¶¶ 10, 11, 12, and Memorandum in Support at p. 11; Exhibit A, Contract, Part I, Section C, p. 17-21, and Part III, Section J, Exhibit 1 at p. 80-89). There is nothing in the documents that suggests CESI failed to perform the inspections as required by the HOTD/SDC Contract (Exhibit N, Smith, p. 18, ln. 9-14). Additionally, a small crack in a steam line may not exist on one day but could grow in subsequent days (Exhibit N, Smith, p. 18, ln. 9 – p. 19, ln. 25).

32.    Capital improvements were not included in the scope of the HOTD/SDC Contract, as it stated that "[m]ost of the direct buried lines are in poor condition from the hostile underground environment and lack of cathodic protection . . . [and] HOTD is planning several major capital improvement projects for the next several years. Capital improvement projects are generally not included in the basic services of this Contract" (Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Part III, Section J, Exhibit 1, p. 79, ¶ 5).

33.    CESI joins in and incorporates by reference herein any Statement of Material Facts in Opposition filed or to be filed by Plaintiffs to the extent such Statement

of Material Facts in Opposition does not conflict with CESI's multiple Motions for Summary Judgment and this Opposition.

**CONSOLIDATED ENGINEERING SERVICES, INC.**

By:   /s/ David D. Hudgins
David D. Hudgins (D.C. Bar # 362451)
HUDGINS LAW FIRM, P.C.
515 King Street, Suite 400
Alexandria, VA 22314
Tel: (703) 739-3300
Fax: (703) 739-3700
*Counsel for Defendant/Third-party Plaintiff*
*Consolidated Engineering Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 12th day of November 2007 to:

Karen L. Melnik
Assistant United States Attorney
555  4th Street, NW
Washington, DC  20530
*Counsel for Federal Defendants*


Robert B. Adams
Timothy Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA  22102
*Counsel for Plaintiffs*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day & Zimmerman Services, Inc.*


/s/ David D. Hudgins
David D. Hudgins

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                   )
NATALIE T. HSIEH, et al.,                          )
                                                   )
        Plaintiffs,                                )        Civil Action No. 1:06-cv-01218
                                                   )             (CKK/JMF)
v.                                                 )
                                                   )        Next event: November 12, 2007
UNITED STATES OF AMERICA, et al.,                  )                    Dispositive Motions
                                                   )                    Oppositions Deadline
        Defendants.                                )
                                                   )
_____)
CONSOLIDATED ENGINEERING                           )
SERVICES, INC., defendant and                      )
third-party plaintiff,                             )
                                                   )
v.                                                 )
                                                   )
DAY & ZIMMERMAN                                    )
SERVICES, INC., third-party defendant. )
                                                   )
_____)

CONSOLIDATED ENGINEERING SERVICES, INC.'S MEMORANDUM IN
OPPOSITION TO UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT

        Consolidated Engineering Services, Inc. ("CESI"), by counsel, pursuant to LCvR

7(h), and in Opposition to United States of America's (and possibly the General Services

Administration's) Motion to Dismiss or Motion for Summary Judgment, states as

follows:

I.      INTRODUCTION AND BACKGROUND

        CESI has filed its own Motion for Summary Judgment against the United States

and General Services Administration (collectively "US/GSA") to the extent the US/GSA,

in its cross-claim against CESI, seeks indemnity and contribution from CESI for the

1

US/GSA's own negligence. As the United States ("US") raises similar issues in its Motion to Dismiss or for Summary Judgment, CESI adopts and incorporates by reference herein its Statement of Facts and Memorandum in Support of its Motion for Summary Judgment against US/GSA. Contrary to what the US claims, CESI did not agree to indemnify the government for the US/GSA's own negligence.

Additionally, CESI notes that in the US's Motion, apparently not joined by the General Services Administration ("GSA"), the US assumes an incorrect procedural status at some points. To clarify, the US and the GSA are defendants to plaintiffs Matthew and Natalie Hsieh's ("Plaintiffs' ") Complaint and are defendants to CESI's cross-claim. The US and GSA are not defendants on any third-party claim. The US appears at times to be only seeking dismissal or summary judgment on the claim against it by CESI, which is a cross-claim and not a third-party claim as alleged by the US. If the US is attempting to seek dismissal or summary judgment against Plaintiffs, CESI joins in and incorporates by reference herein any Opposition filed or to be filed by Plaintiffs to the extent such Opposition does not conflict with CESI's multiple Motions for Summary Judgment and this Opposition.

In its cross-claim, CESI is seeking to impose liability on the US/GSA for the negligence of the US/GSA. Instead of accepting responsibility for its own negligence, if any negligence can be shown by Plaintiffs, the US is arguing in its Motion that Contract No. GS-11P-01-YMC-0085 (the "HOTD/SDC Contract") with CESI should be construed to make CESI liable for the negligence of the US. The HOTD/SDC Contract did **not**, however, require CESI to indemnify the US for the negligent acts of the United States. See CESI's Motion for Partial Summary Judgment at 5-11. Besides the fact that such an

2

interpretation would be contrary to public policy, it is contrary to the plain language of the contract when read as a whole.

Even if the HOTD/SDC Contract could be construed as imposing liability on CESI for the negligence of the United States, the clause on which the United States relies, found at Section H.8.A of the HOTD/SDC Contract and identified as the "Insurance Requirement", is not a standard clause under the Federal Acquisition Regulation ("FAR") or GSA's FAR supplement ("GSAR"). This particular clause does not appear anywhere in the FAR or in the GSAR. As such, this clause would have needed appropriate approval, and there is no indication in the record of any required approval.

CESI is also protected by the government contractor defense. CESI adequately performed the inspection and maintenance procedures required by the United States in accordance with the specifications of the HOTD/SDC Contract. CESI should not be held responsible for the United States' decision to omit additional procedures from the HOTD/SDC Contract specifications, or to forego needed repairs, or to postpone needed capital improvements to the nearly 90-year-old system. CESI's maintenance contract was limited to just that – basic inspection, maintenance and minor repair of the system; the HOTD/SDC Contract specifically excluded capital improvements which could have addressed the degradation and aging of the Steam Distribution Complex. In short, the US simply wanted a contractor to put "band-aids" on the aging system until the US actually renovated and overhauled the entire system.

## II.    FACTS

CESI contests the facts as presented by US. Contrary to what the US claims in its Motion, plaintiffs Matthew and Natalie Hsieh ("Plaintiffs") have alleged in this matter

3

that both CESI and US/GSA were negligent. There is a dispute of material fact as to whether there was any negligence on the part of the US/GSA and/or CESI that caused Plaintiffs' injuries, although there is no dispute that plaintiff Matthew Hsieh contributed to his own injuries and contributed to his daughter's injuries (See Defendants' Joint Motion for Summary Judgment against Matthew Hsieh and Defendant CESI's Motion for Summary Judgment on its Counterclaim against Matthew Hsieh). The US glosses over this dispute and claims in its Motion, with almost no explanation or citation to the record, that CESI solely caused any injuries the Plaintiffs may establish. The US is attempting to claim that it has essentially washed its hands of the HOTD/SDC by soliciting a contract for repair and maintenance.

The fact is, the US did not delegate all of its responsibility for the HOTD/SDC to any contractor, whether it be Day & Zimmerman Services, Inc. ("D&Z"), CESI, or anyone else. At times relevant, CESI had some responsibilities and US/GSA had some responsibilities with respect to the HOTD/SDC. Without conceding that there was any negligence whatsoever on the part of CESI or the US or GSA, and without conceding the validity of Plaintiffs' expert's opinions, CESI notes that the US ignores the Plaintiffs' expert who testified that there were multiple factors that caused the Plaintiffs' alleged injuries. Plaintiffs' expert testified that several causes were under the control or direction of the government, not CESI, such as the design of the system and the need for the US to approve additional work to repair and improve the degrading system. (SMF Opposition ¶ 30). Plaintiffs' expert's opinions present a dispute as to the proximate cause(s) of the Plaintiffs' alleged injuries. Consequently, there is a dispute as to whether there was any

negligence on the part of CESI and/or US that proximately caused the alleged injuries to plaintiffs, and the US's Motion to Dismiss or for Summary Judgment must be denied.

Moreover, the clause of the HOTD/SDC Contract upon which the US relies should not be interpreted to mean that CESI agreed to indemnify the government for its own negligence. CESI incorporates herein the facts and argument from its Motion for Summary Judgment against US/GSA on that issue. CESI disputes the interpretation of the HOTD/SDC Contract as alleged by the US in its Motion and Statement of Material Facts. In its pleadings, the US attempts to interpret language from the contract rather than state what the HOTD/SDC Contract actually states. Furthermore, the US also takes language from a "red-lined" document that was actually not properly part of the HOTD/SDC Contract, since the original base contract was never changed by a proper Modification. CESI asserts that the proper quotations from the HOTD/SDC Contract are contained in its Statement of Material Facts in Genuine Dispute in Opposition to the US's Motion to Dismiss or for Summary Judgment ("SMF Opposition") which uses the language from the original base contract, Exhibit A to CESI's Motion for Summary Judgment against US/GSA.

The US, in its Memorandum, assumes facts that are not even recited in its Statement of Material Facts or in its exhibits. Particularly, as discussed above, the US claims in its Memorandum that the Plaintiffs' injuries were caused by negligence of CESI, but makes no Statement of Material Fact concerning the cause(s) of the Plaintiffs' injuries and no citation to the record. To the extent that US may claim there is not a dispute as to the cause of Plaintiffs' injuries, CESI contests those facts here and in CESI's Statement of Material Facts as to which CESI contends there is a genuine issue, filed

herewith.  Since there is a dispute as to the cause(s) of Plaintiffs' alleged injuries and the HOTD/SDC Contract cannot be interpreted to require CESI to indemnify the US for the US's own negligence, if any, the US's Motion should not be granted and the US should not be dismissed from this case.

## III.    ARGUMENT

### A.    The "Insurance Requirement" Provision Relied On By the United States is an Unauthorized Deviation From Procurement Regulations.

The "Insurance Requirement" in the HOTD/SDC Contract, as discussed in CESI's Motion for Summary Judgment against the US/GSA, should not be interpreted to mean that CESI should indemnify the US for the US's own negligence.  Even if it could be interpreted in that manner, the US has not offered any evidence that this clause upon which it relies is an approved deviation.

The clause is not contained in FAR or in the GSAR.  Accordingly, the "Insurance Requirement" clause is a "deviation" which, among other things, requires approval from an agency head or the Head of the Contracting Activity.  See FAR 1.402, 1.403; see also GSAR 501.403.  A contracting officer "is not authorized to deviate from the requirements of procurement regulations when the necessary authorization to do so has not been given."  See Johnson Management Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1256 n.2 (Fed. Cir. 2002).  An unauthorized deviation "from the regulatory requirements is a violation of the regulations and beyond the authority of the contracting officer."  See id. (citing McDonnell Douglas Corp. v. United States, 229 Ct. Cl. 323, 670 F.2d 156, 159 (1982).

Standard contract clauses for contracts entered into by the United States are contained in FAR Part 52 and, in the case of GSA, also in FAR Part 552.  See 48 C.F.R.

52.00 et seq.; see also 48 C.F.R. 552.00 et seq. Deviations from these standard contract clauses are permitted, but **only** with the appropriate authorization as required in the FAR. See, e.g., FAR 1.403 GSAR 501.403; see also Johnson Management Group CFC, Inc., 308 F.3d at 1256 n.2. An unauthorized deviation is considered a violation of procurement regulations. See Johnson Management Group CFC, Inc., 308 F.3d at 1256 n.2. The "Insurance Requirement" provision contained in the HOTD/SDC Contract, to which the United State has relied, is a "deviation" from the standard FAR and GSAR contract provisions, and there is no indication in the record that the "deviation" was properly approved.

First, the "Insurance Requirement" plainly seeks to modify the contract requirements found at FAR 52.228-5 Insurance – Work on a Government Installation (Sept. 1989). That standard clause, among other things, requires the contractor to maintain insurance and certify that it has obtained such insurance, but lacks any mention of indemnification of the United States. However, the "Insurance Requirement", as drafted by the United States in the HOTD/SDC Contract, contained indemnification language that is not standard. Such a modification is considered a "deviation." FAR 1.401(c) (defining a deviation as or "the use of a … contract clause with modified or alternate language that is not authorized by the FAR").

Second, even if the "Insurance Requirement" was not intended to modify FAR 52.228-5, it is still considered a deviation according to the FAR, which states that a deviation also includes "[t]he issuance or use of a … contract clause … of any kind at any stage of the acquisition process that is inconsistent with the FAR." See FAR 1.401(a). The "Insurance Requirement" is not a standard FAR or GSAR clause. Further,

the indemnification requirement that the United States seeks here (as interpreted by the United States) is inconsistent with alternate authorized contract clauses in the FAR and GSAR that exist to allow for indemnification of the United States by its contractors. See, e.g., FAR 52.227-3 (for patent infringement claims); FAR 52.237-7 (for contracts for non-personal health care services contracts); FAR 52.228-8 (for leasing of motor vehicles); FAR 52.247-21 (for transportation or transportation-related contracts); FAR 52.245-11 (for contractors provided with government facilities, such as office space, to perform the government contract).

Individual deviations of standard FAR clauses, such as the "Insurance Requirement" above, may only be authorized by the agency head (see FAR 1.403), or by the Head of the Contracting Activity (see GSAR 501.403). The HOTD/SDC contracting officer cannot deviate from the FAR without such authorization. See Johnson Management Group CFC, Inc., 308 F.3d at 1256 n.2. Any such unauthorized deviation is a violation of procurement regulations. See id. Furthermore, FAR 1.403 requires that the contracting officer must document the justification for the deviation and the agency approval in the contract file. The FAR also requires agencies to identify all authorized deviations used in place of standard government contract clauses. See FAR 52.107(f).

Because the US has not presented any evidence to demonstrate that the "Insurance Requirement" clause was a properly authorized deviation to the FAR, even if the US's strained reading of the clause is accepted, the clause may not be applied against CESI. At a minimum, there are facts in dispute that preclude entry of summary judgment for United States as against CESI.

8

**B.    CESI Cannot Be Held Liable for Following the Inspection and Repair Specifications Mandated By the United States.**

CESI performed inspections, maintenance, and repair services pursuant to the detailed specifications provided by the United States in the HOTD/SDC Contract. (SMF Opposition ¶ 31). The United States developed these specifications with knowledge that the HOTD/SDC was aging and in poor condition, requiring a massive overhaul beyond the scope and resources of the HOTD/SDC Contract. See e.g., Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract, Part III, Section J, Exhibit 1 at 78 (stating that "[m]ost of the direct buried lines are in poor condition from the hostile underground environment and lack of cathodic protection . . . [and] HOTD is planning several major capital improvement projects for the next several years.  Capital improvement projects are generally not included in the basic services of this Contract"). The balancing of economic and safety concerns in the maintenance of the Steam Distribution Complex is, of course, within the discretion of the United States.  The US exercised that discretion when it developed the specifications contained in the HOTD/SDC Contract.  CESI cannot be held responsible for the shortcomings of those specifications developed by the US.

Among other things, the HOTD/SDC Contract did not require the contractor to completely overhaul the system by replacing all of the steam pipes, replacing or providing insulation on the pipes, modifying the design of the manholes or system, or adding equipment to the system such as sump pumps or water-level alarms.  (See generally Exhibit A to CESI's Motion for Summary Judgment against US/GSA, Contract; see SMF Opposition ¶ 31).  Any work over $1000 was not within the basic scope of work and had to be approved by US/GSA.  (SMF ¶ 11).  Major capital

improvement projects were not contemplated or required by the contract. (SMF Opposition, ¶ 31). In fact, the Contract did not permit CES to perform such capital improvements. (SMF Opposition ¶ 31).

The law recognizes that when a contractor follows the Government's specifications, the contractor is protected against the consequences of following those specifications. This principle is known as the Government Contractor Defense, established in Boyle v. United Technologies Corp., 47 U.S. 500, 108 S.Ct. 2510 (1988).

In Boyle, the Supreme Court held that a government contractor should not be held liable for defects in equipment where "(1) the United States approved reasonable precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." See Boyle v. United Technologies Corp., 47 U.S. 500, 512, 108 S.Ct. 2510, 2518 (1988). The Court noted that under the Federal Tort Claims Act ("FTCA"), the United States cannot be sued when it performs or fails to perform a discretionary function. See id. at 511, 2518. The policy justification is to prevent "second-guessing" of discretionary decisions made by the United States. See id. The Court further explained that contractors should not be held liable for following specifications developed as a result of such discretion:

> [T]ort suits against contractors would produce the same effect sought to be avoided by the FTCA exemption. The financial burden of judgments against contractors would ultimately be passed through, substantially if not totally, to the United States itself, since defense contractors will predictably raise their prices to cover, or to insure against, contingent liability for the Government-ordered designs.

Id. at 511-12, 2158.

Likewise, if it is determined that the Plaintiffs' injuries were caused by a matter that was in the discretion of the United States, then CESI should be entitled to protection under the Government Contractor Defense since it followed the specifications of the HOTD/SDC Contract.

The Government Contractor Defense applies to maintenance contracts like the HOTD/SDC Contract. See, e.g., Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329 (11th Cir. 2003). In the context of a maintenance contract, the three elements of the defense are: (1) the United States approved reasonably precise maintenance procedures; (2) the contractor's performance of the maintenance conformed to those procedures; and (3) the contractor warned the United States of dangers in reliance on those procedures that were known to the contractor but not to the United States. See id. at 1335.

In Hudgens, the plaintiffs sought recovery from a maintenance contractor for the United States Army for damages resulting from the crash of an Army helicopter. See id. at 1330. The maintenance contract required the contractor to "determine the airworthiness condition of …aircraft as required by applicable regulations and publications [and] such a determination shall be based on inspection, maintenance [,] operational checks, and test flying as required by applicable Army publications and directives." See id. at 1331. The Army provided for reasonably precise maintenance procedures and "DynCorp was not required to institute any procedures not expressly prescribed by the Army." See id. at 1335. The procedures provided for inspections at certain intervals, maintenance checklists, and instructions for repair. See id. at 1331.

The Army, in the Hudgens case, was aware that the particular helicopter was susceptible to cracks. See id. Despite this knowledge, the Army declined to adopt

procedures that would specifically address this known risk and instead essentially relied on the general maintenance procedures it provided to its maintenance contractor. See id. at 1331-32, 1336. As a result, the crack that led to the crash and injury of the plaintiffs was left undetected. See id. at 1330, 1336-45.

Rather than accept responsibility for its failure to provide adequate inspection procedures to address this known risk, the Army blamed its maintenance contractor for failing to detect the crack. Id. at 1337. The court, however, found that "DynCorp [could] not be held liable for failing to institute the procedures" that the Army declined to adopt to detect such cracks. See id. at 1336-37. The court affirmed the finding below that, in following the procedures as directed by the Army, the maintenance contractor could not have located the crack prior to the crash. Id. at 1345. The court properly found that it was the Army, not its maintenance contractor that was responsible for disregarding the known danger.

Likewise here, as in Hudgens, the US was aware of known risks associated with the degradation and aging of the Steam Distribution System, and was also aware of this problem through the required reporting pursuant to the HOTD/SDC Contract. The United States was aware of the likelihood of pervasive leaking and ruptures if older elements of the HOTD/SDC were not replaced. Despite this knowledge, the HOTD/SDC Contract did not provide for additional procedures to address these known risks. Instead, the HOTD/SDC Contract proscribed simple inspections and preventative maintenance according to a specific schedule that rotated between "zones" each month. The United States provided CESI with checklists, which were to be followed during the preventative maintenance under the HOTD/SDC Contract. CESI followed those requirements, and

there is no indication that there was any failure by CESI to inspect pursuant to the HOTD/SDC Contract specifications. Here, as in the <u>Hudgens</u> case, the US is attempting to shift blame to the contractor for failing to detect an alleged crack in the steam line pursuant to the contractor following the inspection checklists proscribed by the US.

The US noted in the HOTD/SDC Contract that major replacements to the Steam Distribution System were outside the scope of work, stating that, "HOTD is planning several major capital improvement projects for the next several years [and] [c]apital improvement projects are generally not included in the basic services of this Contract." It is those very capital improvement projects that could have prevented the release of steam in this case. It was the decision of the United States, not CESI, to exclude needed capital improvements from the contract. CESI should not be held responsible for the United States' decision to defer making the repairs necessary to prevent such known risks, such as frequent leaks from the steam pipes, associated with the aging HOTD/SDC.

Even if the Court could determine that there is no dispute as to the facts concerning the cause(s) of the Plaintiffs' injuries and that the United States' is not subject to suit by Plaintiffs' pursuant to the FTCA, then CESI should also be granted judgment in its favor, as there is no dispute that CESI was performing the HOTD/SDC Contract pursuant to the specifications and that CESI is therefore protected by the Government Contractor Defense.

## III.    <u>CONCLUSION</u>

WHEREFORE, for the reasons stated in this Opposition and the Statement of Material Facts in Genuine Issue, Consolidated Engineering Services, Inc. respectfully

requests that this Honorable Court deny the United State's Motion to Dismiss or Motion for Summary Judgment and requests an award of its costs and attorneys' fees and such other relief as the Court deems proper.

**CONSOLIDATED ENGINEERING
SERVICES, INC.**

By:    /s/ David D. Hudgins
       David D. Hudgins (D.C. Bar # 362451)
       HUDGINS LAW FIRM, P.C.
       515 King Street, Suite 400
       Alexandria, VA 22314
       Tel: (703) 739-3300
       Fax: (703) 739-3700
       *Counsel for Consolidated Engineering
       Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 12th day of November 2007 to:

Karen L. Melnik
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
*Counsel for Federal Defendants*

Mary Malloy Dimaio
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204
*Counsel for Third-party Defendant Day &
Zimmerman Services, Inc.*

Robert B. Adams
Timothy Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA 22102
*Counsel for Plaintiffs*

/s/ David D. Hudgins
David D. Hudgins

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 1:06-cv-01218 |
| ) | (CKK/JMF) |
| v. ) | |
| ) | Next event:  November 12, 2007 |
| UNITED STATES OF AMERICA, et al., ) | Dispositive Motions |
| ) | Oppositions Deadline |
| Defendants. ) | |
| ) | |

NATALIE T. HSIEH, et al.,  )

    Plaintiffs,  )

v.  )

UNITED STATES OF AMERICA, et al.,  )

    Defendants.  )

CONSOLIDATED ENGINEERING
SERVICES, INC., defendant and
third-party plaintiff,  )

v.  )

DAY & ZIMMERMAN
SERVICES, INC., third-party defendant. )

Civil Action No. 1:06-cv-01218
(CKK/JMF)

Next event:  November 12, 2007
Dispositive Motions
Oppositions Deadline

## ORDER

Upon consideration of United States of America's (and General Services Administration's) Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and submissions filed therewith, along with the entire record herein, Consolidated Engineering Services, Inc.'s Opposition to the Motion, and any Opposition to the Motion filed by other parties to this case; it is hereby

ORDERED that United States of America and General Services Administration's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment be and hereby is DENIED.

_____

Colleen Kollar-Kotelly
United States District Judge

cc:

David D. Hudgins (D.C. Bar # 362451)
Hudgins Law Firm, P.C.
515 King Street, Suite 400
Alexandria, VA 22314

Karen L. Melnik (D.C. Bar # 436452)
Assistant United States Attorney
555 4th Street, NW, Rm. E 4112
Washington, DC 20530

Robert B. Adams
Timothy R. Obitts
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA 22102

Mary Malloy Dimaio (D.C. Bar # 464100)
Maher & Associates
Nottingham Center, Suite 410
502 Washington Avenue
Towson, MD 21204