UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CONSOLIDATED ENGINEERING )<br>SERVICES, INC., et al., )<br>)<br>Defendants. )<br>_____ ) | Civil Action No: 06CV1218 (CKK) |

**THIRD PARTY DEFENDANT UNITED STATES OF AMERICA'S OPPOSITION TO CONSOLIDATED ENGINEERING SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Third Party Defendant United States, respectfully opposes Consolidated Engineering Service, Inc.'s ("CESI"), motion for partial summary judgment. In support thereof, the United States submits the attached Response to CESI's Material Facts As To Which There Is No Genuine Issue, and Memorandum of Points and Authorities.

Respectfully submitted,

_____/s/_____ _____
JEFFREY A. TAYLOR, DC BAR # 498610
United States Attorney


_____/s/_____ _____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____ ___
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CONSOLIDATED ENGINEERING SERVICES, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No: 06CV1218 (CKK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT UNITED STATES OF AMERICA'S RESPONSE TO CESI'S
STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE** [1]

Pursuant to LCvR 7(h), the Defendant submits the following response to Consolidated Engineering, Inc.'s ("CESI") statement of material facts as to which there is no genuine issue.

Statements of Fact 1-4, 18-20:  The Defendant does not dispute statements of material fact one (1) through fourteen (14) or eighteen (18) through twenty (20) .

Statement of Fact 15:  Here, CESI takes quoted language out of context in an attempt to support its argument that GSA directly supervised, or had day-to-day control over the contractor. However, the questions preceding the quoted language concern GSA's responsibilities for "dewatering" manholes after a contractor is hired to conduct the maintenance and repair of the Steam Distribution Complex ("SDC").  See Exhibit 9 (Deposition of Harry Washington) ("Washington Dep.") at 46: 9-22.  Specifically, Mr. Washington testified that the General

---

[1] CESI cites to a different version of the contract.  On May 3, 2007, during the deposition of Mike Vrobel, GSA Contracting Officer for the contract, the correct version of the contract for the second option year (the option year during which the alleged incident occurred) was entered as Exhibit 1.  This is the version the parties agreed to as the correct version of the contract, and it is this version that the United States cites to in both its Opposition and in its Motion to Dismiss or, in the Alternative, for Summary Judgment.  See Exhibit 1 (Deposition of Mike Vrobel) ("Vrobel Dep.") at 5:7-22, 6:1-3 (attached hereto).

Services Administration ("GSA") did *not* have direct responsibility for finding water in manholes. Id. (emphasis added). Further, Mr. Washington clarifies his statement by saying that if a GSA employee were to ride by a manhole and see steam emanating from it, the GSA employee would call the contractor to address the problem. Id. at 47: 2-3.

Statement of Material Fact 16 and 17: Here, CESI points out Mr. Lambright's actions following the incident of September 11, 2004, in an effort to characterize the relationship between GSA and CESI. What CESI fails to mention is that although Mr. Lambright entered Manhole 42 first on **September 12, 2004**, it was Mr. Richard Matkins, the CESI project manager, who was first on the scene on **September 11, 2004**. See Exhibit 10 (Deposition of Richard Matkins) ("Matkins Dep.") at 52:20 - 53:16. Mr. Matkins barricaded the area around Manhole 42 and then called another CESI employee to assist at the scene. Id. at 54: 2-5. CESI employees, not GSA employees, pumped the water out of Manhole 42 on September 11, 2004. See Exhibit 9 (Washington Dep.) at 27:16-22; 28: 3-17. Moreover, CESI sub-contracted a welding company to remove and replace a piece of equipment in Manhole 42. See Exhibit 10 (Matkins Dep.) at 103:5-17. Lastly, the contract requires that CESI assist GSA, on a reimbursable basis, with emergency repairs within the SDC. See Exhibit 3 (Contract) at 22.

Statement of Fact 21: CESI's understanding of the contract is immaterial.

November 13, 2007                     Respectfully submitted,

                                      _____/s/_____
                                      JEFFREY A. TAYLOR, DC BAR # 498610
                                      United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W. Civil Division
Washington, D.C. 20530
        (202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, <u>et al</u>., )<br>)<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>CONSOLIDATED ENGINEERING )<br>SERVICES, INC., <u>et al</u>., )<br>)<br>    Defendants. )<br>_____) | Civil Action No: 06CV1218 (CKK) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD PARTY DEFENDANT UNITED STATES' OPPOSITION TO CONSOLIDATED ENGINEERING SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States, in opposition to Consolidated Engineering Services, Inc.'s ("CESI") Motion for Partial Summary Judgment, states as follows:

CESI's motion is another flawed attempt to impose liability on the United States for the alleged negligence of CESI's own employees. CESI's efforts to obtain contribution and/or indemnification from the United States in the event they are found liable, should be rejected for two reasons. First, the injuries resulted from the alleged acts or omissions of CESI, a government contractor, and not the actions of an employee of the United States. Thus, there is no waiver of sovereign immunity and this Court lacks jurisdiction to hear the claims. Second, the contract between the United States and CESI expressly mandates that CESI indemnify and hold harmless the United States against any claims for damages or injuries.

### FACTS

The General Services Administration ("GSA"), National Capital Region, Heating Operations and Transmission Division ("HOTD") contracted with CESI to maintain and repair

the Steam Distribution Complex ("SDC").  See Exhibit 1 (Base Award) and Exhibit 2 (Novation Agreement), to United States' Motion to Dismiss, or in the Alternative, For Summary Judgment ("U.S. Motion").  The contract required that the contractor employ a full time project manager to be fully responsible for administering personnel, directing work, and interfacing with the Government.  See Exhibit 3 (Contract) to U.S. Motion at 22.  The contract also required that the contractor provide all management, labor, supervision, vehicles, equipment and materials required to perform the required repairs and replacements.  See id. at 25.

The contract is unambiguous that "the Contractor assumes **full liability and responsibility for all losses and damages to property or injuries to persons** occasioned through the performance of any service. . ."  See id. at 47 (emphasis added).  Moreover, the contract states that, "[t]he **Government shall be indemnified and saved harmless against claims for damages and/or injuries**."  See id. at 47 (emphasis added).  The contract specifies that the Government, a self-insuring entity, will not indemnify the Contractor against any risk under the contract.  See id. at 48.

The specific event that gave rise to this lawsuit occurred on September 11, 2004, when Plaintiffs Dr. Hsieh and his minor daughter, were allegedly injured by steam on the corner of 10th Street, NW and Pennsylvania Avenue, N.W., while taking pictures of a friend outside the Federal Bureau of Investigation ("FBI") Headquarters Building ("the Hoover Building"); the minor plaintiff was in her stroller being pushed by her father.  See Exhibit 8 to U.S. Motion (Deposition of Dr. Hsieh) ("Hsieh Dep.") at 23:18-20; 25:10-11; 38:13-22; 39:1-5; 44:1-22; 45:1-5.  The manhole located in front of FBI Headquarters Building is known as Manhole 42.  See Third Party Complaint ¶5.

## **ARGUMENT**

As a preliminary matter, it is important to note that where, as here, the parties have submitted cross-motions for summary judgment, the Court must rule on each side's motion "on an individual and separate basis, determining in each case whether judgment may be entered in accordance with Fed. R. Civ. P. 56." Spears v. Nationwide Mut. Inc. Co., 254 F. Supp. 2d 144, 152 (D.D.C. 2003) (internal quote omitted). Thus, "[t]he fact that cross-motions for summary judgment are pending does not preclude a finding that genuine issues of material fact exist, as each party concedes that there are no material facts at issue only for the purposes of its own motion." Id.; see American Bankers Ins. Group v. Bd. Of Governors, 3 F. Supp. 2d 37, 40 (D.D.C. 1998). On the other hand, the existence of a non-material factual dispute or a mere scintella of evidence in support of one side's position is not sufficient to defeat the opposing side's summary judgment motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 251, 52 (1986).

    A.    **CESI's Claim Is Barred By The Contractor Exclusion To The Federal Tort Claims Act**

The Federal Tort Claims Act ("FTCA") only waives the sovereign immunity of the United States for claims resulting from the negligent or wrongful acts or omissions of federal agencies or "employees of the government." 28 U.S.C. §§1346(b) and 2671. See United States v. Orleans, 425 U.S. 807, 814-15 (1976). The FTCA does not waive liability for torts committed by contractors with the United States. The FTCA, in fact, defines the terms "federal agency" and "employee" to exclude "any contractor with the United States." 28 U.S.C. §2671.

The issue of whether a contractor relationship exists, thereby barring liability under the FTCA, is a matter of federal law. Orleans, 425 U.S. at 814. The Supreme Court has ruled that

one's status as an independent contractor depends on the ability of the United States "to control the detailed physical performance of the contractor," Logue v. United States, 412 U.S. 521, 528 (1971), and on "whether [the contractor's] day-to-day operations are supervised by the Federal government." Orleans, 425 U.S. at 815. See also, Cannon v. United States, 645 F.2d 1128, 1132-35 (D.C. Cir. 1981).

      Here, the conduct of the United States pursuant to its contract with CESI, does not meet the threshold criteria under Loque and Orleans for establishing FTCA liability for the acts or omissions of a government contractor. GSA contracted with CESI to conduct inspections, tours, basic operations, and preventive maintenance of the SDC. See Exhibit 3 (Contract) at 23-26. Specifically, CESI was required to tour and inspect all portions of the Steam Distribution Complex and perform all required preventive maintenance on all items within the Steam Distribution Complex. See id. at 22. Under the contract, CESI was also responsible for the basic operation of equipment in the SDC, and with "making all necessary incidental repairs and replacements as well as all necessary minor repairs and replacements ($\leq$ \$1,000) that are identified to be required . . . by the Contractor . . ." See id. 23, 25.

      CESI argues that the independent contractor exclusion to the FTCA would not apply because its employees were under the direct control and supervision of GSA. However, CESI fails to factually support this assertion which, in any event, is wholly inaccurate. CESI points to three sections of the contract to support its argument that GSA had day-to-day control over the contractor. The first section requires CESI to perform maintenance in accordance with a specified schedule. See id. at 23. However, that schedule only broadly identifies the month in which certain manholes need to be inspected. See id. It does not specify the dates of the inspections, leaving that determination to CESI's discretion. See id. The entire SDC is

4

structured in zones, and each zone corresponds to a month of the year.  See id.  GSA simply required that specific zones be inspected in certain months.  See id..  This hardly amounts to detailed physical control by GSA over CESI.  See Logue v. United States, 412 U.S. at 528.

      The second section CESI relies upon concerns the requirement to conduct inspections in accordance with preventative maintenance checklists.  See Plaintiff's Motion at 11; Exhibit 3 (Contract) at 23.  The use of maintenance checklists allows GSA to monitor more efficiently CESI's compliance and performance under the contract.  However, this does not constitute direct control or supervision.  Indeed, that a contractor is required to comply with detailed regulations, specifications, and standards of performance, fails to establish supervision of day-to-day operations or control of the detailed physical performance which is necessary to vitiate the contractor exclusion.  See Logue, 412 U.S. at 529-30; Orleans, 425 U.S. at 817-18; Macharia v. United States, 335 F.3d 61 (D.C. Cir. 2003).  Here, the maintenance checklists constitute less oversight and control than any regulatory or safety requirement.

      Moreover, CESI was responsible for touring, inspecting, basic operation, and general housecleaning of the SDC - - preventive maintenance, and minor repairs and replacements were just one component of those duties.  See Exhibit 3 at 22.  In fact, one of CESI's duties, i.e., touring, involved checking the manholes to see if they were filled with water.  See id. 24.  CESI had an obligation to find and record deficiencies, and to notify GSA of potential problems with the SDC.  See id. at 24; Exhibit 4 (Deposition of Greg Westphal) ("Westphal Dep.") at 84:4-10.  This contractual requirement is the polar opposite of controlling the day-to-day operations of a contractor.  CESI typically inspected manholes and pumped out water from them without GSA involvement or permission.  See Exhibit 5 (Deposition of John Bright) ("Bright Dep.") 24:5-11; 26:20-26; 27:1-7; Exhibit 9 (Washington Dep.) at 21:12-22.

The third section CESI relies upon notes that GSA employees as responsible for the "direct supervision and execution of Steam Distribution Complex maintenance and repair work, and to facilitation and quality assurance of contractor maintenance and repair work." See Exhibit 3 (Contract) at 85. However, GSA employees were neither responsible for the day-to-day supervision of CESI employees, nor did they perform management functions for CESI. These responsibilities rested solely with CESI. See Exhibit 9 (Washington Dep.) at 60:5-13; Exhibit 4 (Westphal Dep.) at 104:14-17. In fact, the contract makes clear that a project manager is to act as the liaison between GSA and the contractor, and is charged with the full responsibility of administering personnel and directing work. See Exhibit 3 (Contract) at 22. Mr. Richard Matkins, a CESI employee, was the project manager for CESI, and its predecessor on the contract, Day & Zimimerman. See Exhibit 10 (Matkins Dep.) at 5:1-13; 90:22; 91:1-22; 92:1-14.

In light of the foregoing, the United States should not be held liable for the tortious conduct, if any, of CESI. See United States v. Orleans, 245 U.S. at 815-816; Logue v. United States, 412 U.S. at 529-530; Cannon v. United States, 645 F.2d at 1139-40. The GSA's interaction with the contractor, through the zone schedules, preventive maintenance checklists, and the GSA employees dedicated to contract oversight, were only a means of monitoring compliance with and performance under the contract. Indeed, "courts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the United States." Cooper v. United States, 225 F. Supp. 2d 1, 4 (D.D.C. 2002). The government's retention of its ability to inspect the contractor's work is *insufficient* to transform an independent contractor to an agent or servant of the Government. See Jennings v. United States, 530 F.Supp. 40, 43 (D.D.C. 1981) (emphasis

added). Nor does a requirement to comply with detailed regulations, specifications, or standards in performing the work, standing alone, vitiate the contractor exclusion. Logue, 412 U.S. at 529-30; Orleans, 425 U.S. at 817-18; Macharia v. United States, 335 F.3d 61 (D.C. Cir. 2003).

Other Circuits have also addressed this issue. In Alexander v. United States, 605 F.2d 828, 832 (5th Cir. 1979), the United States retained the right to: 1) approve design and specifications of any item utilized in a manufacturing process, 2) perform safety analyses of all test programs, standard operating procedures, and equipment, 3) conduct hazard studies of all systems and equipment, and 4) discharge contractor personnel for reasons of misconduct or security (subject to a dispute process). The United States Court of Appeals for the Fifth Circuit held that all of that retained authority could not be said to constitute day-to-day supervision of the contractor, but that it was only a means of monitoring compliance with the contract. Id. at 834. Indeed, "broad, supervisory control, or even the potential to exercise detailed control, cannot convert a contractor into an agent, . . ." Gibson v. United States, 567 F.2d 1237, 1242 (3rd Cir. 1977). Courts have consistently held that the United States cannot be held liable "solely because the Government retained control over the work." Id. at 1243.

CESI has not provided any facts to support its contention that GSA acted as a day-to-day supervisor. GSA simply maintained its right to inspect CESI's work to ensure contract compliance. See Exhibit 9 (Washington Dep.), at 60:5-13; and Exhibit 4 (Westphal Dep.) at 104:14-17.

**B.     CESI Bargained Away Its Right To Indemnification or Contribution**

To obtain contribution, a prerequisite to entitlement is that the parties be joint tortfeasors such that the parties' negligence concurred in causing Plaintiff's harm. District of Columbia v. Washington Hospital Center, 722 A.2d 332, 336 (D.C. 1998). In this case, there is no evidence

that the United States was negligent. Indeed, it is clear from the record that GSA had no notice of a potentially hazardous situation at Manhole 42. See Exhibit 6 (September 7, 2004 field work order)("FWO"); Exhibit 7 (September 9, 2004 FWO); Exhibit 4 (Westphal Dep.) at 19-20; Exhibit 5 (Bright Dep.) at 30-31; 36:10-15. Therefore, the United States is not negligent and CESI is not entitled to contribution.

Even if the United States were deemed negligent, CESI bargained away its right to indemnification or contribution. In a recent Memorandum Opinion by a court in this District, Hudert, et al. v. Alion Science & Technology Corporation, et al. v. United States of America, et al., Civil Action No. 05-545 (RBW) (attached hereto), the Government's Motion for Reconsideration was granted, and the contractor's claim for contribution was dismissed because the parties had entered into a contract providing indemnification to the United States. See id. at 8. The contract in that case provided in pertinent part as follows:

> [t]he Contractor shall save harmless and provide indemnity to the Government against any and all liability, claims and costs of whatever kind and nature for injury or death to any person or persons and for loss or damage to any property (Government or otherwise) occurring in connection with or in any way incident to or arising out of the performance of work in connection with this contract, resulting in whole or in part from the negligent acts or omissions of the contractor. . .

Id. at 5-6. There, the contractor argued that the above-cited language generally precluded contribution in favor of the contractor, but that it did not exclude contribution for liability arising out of the United States' conduct. Id. at 7. The District Court found that the contractor's interpretation of the indemnification provision did not comport with the plain language of the contract, which requires that the contractor save harmless and indemnify the Government against any and all liability. Id. at 7. By agreeing to indemnify the United States, the contractor had bargained away its rights to seek contribution, if found liable, even if the United States was

8

negligent. Id. at 8.

In this case, as in that case, CESI assumed full liability and responsibility for all injuries, and was to indemnify the Government against claims for damages and/or injuries. See Exhibit 3 (Contract) at 47. In seeking a different interpretation, CESI relies heavily on United States v. Seckinger, 397 U.S. 203, reh'g denied 397 U.S. 1031 (1970). The operative contract language in Seckinger was that the contractor "shall be responsible for all damages to persons or property that occur as a result of his fault or negligence." Id. at 204 (emphasis added). There, the Supreme Court determined that the contract did not clearly indicate the intention of the parties, i.e., that the Government would be indemnified for its own negligence. Id. at 215.

The contractual provisions in this case are not analogous to those in Seckinger. Here, it is undisputed that the contract provides that CESI assumes full liability and responsibility for all losses and damages to property or injuries to persons through the performance of their contract. See Exhibit 3 (Contract) at 47 (emphasis added). Moreover, the contract provides that the Government shall be indemnified and saved harmless against claims for damages and/or injuries. Id. Further, the contract requires CESI to provide insurance coverage for any other risks as deemed appropriate and the Government would not indemnify CESI against any risk under the contract. See id. at 48. The contract in this case does not have the same ambiguity as the indemnification provision in Seckinger. Rather, it is clear from the contract language, which is not qualified with the words "his fault or negligence," that CESI is solely liable for the injuries Plaintiffs sustained. See Seckinger, 397 at 204.

Further, additional support for the Government's position that it is entitled to indemnification from CESI, is found in Kaiser v. Ramada Hotel Operating Co., Civ. A. No. 90-0462 (MB), 1991 WL 283726 (D.D.C. Dec. 19, 1991). The plaintiff in Kaiser sustained injuries

9

when she was struck by a van being valet-parked by an Atlantic Garage employee at a Ramada Hotel. Id. at *1. The jury returned a verdict of $100,000 against all the defendants in that case. Id. Ramada sought contractual indemnification from Atlantic Garage based on a lease between the two entities. Id. at *4. The lease between Ramada and Atlantic Garage required that Atlantic Garage indemnify and hold Ramada harmless for all losses incurred by reason of Atlantic's neglect or use of the premises. Id. The Court found that Atlantic Garage had bargained away its right to seek contribution as a joint tortfeasor and, thus, Ramada's claim for indemnification was valid. Id.

In sum, since contract language in this case clearly expresses the intention of the parties, and CESI has not challenged the contract's validity or authenticity, in the unlikely event that the United States is found negligent, CESI should indemnify the United States.

## CONCLUSION

The Third-Party Defendants respectfully opposes CESI's Motion for Partial Summary Judgment and request that it be denied.

November 13, 2007                         Respectfully submitted,

                                          _____/s/_____
                                          JEFFREY A. TAYLOR, DC BAR # 498610
                                          United States Attorney

                                          _____/s/_____
                                          RUDOLPH CONTRERAS, DC BAR #434122
                                          Assistant United States Attorney

                                                    /s/
_____
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIE T. HSIEH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No:  06CV1218 (CKK) |
| ) | |
| CONSOLIDATED ENGINEERING ) | |
| SERVICES, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**<u>ORDER</u>**

Upon consideration of Consolidated Engineering Service, Inc.'s (CESI) Motion for Partial Summary Judgment and Third Party Defendant United States' Opposition to CESI's Motion, and the entire record herein, it is this _____ day of _____, 2007 hereby

ORDERED that Consolidated Engineering Service, Inc.'s (CESI) Motion for Partial Summary Judgment be, and it hereby is DENIED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Karen Melnik, Esq.
Assistant United States Attorney
555 Fourth Street, N.W.—Civil Division
Washington, D.C. 20530
(202) 307-0338

David D. Hudgins, Esq.
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA 22314

Robert B. Adams, Esq.
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, Virginia 22102