**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATALIE T. HSIEH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )   Civil Action No:  06CV1218 (CKK) |
| CONSOLIDATED ENGINEERING | ) |
| SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIRD PARTY DEFENDANT UNITED STATES OF AMERICA'S REPLY IN**
**SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR**
**SUMMARY JUDGMENT**

This Reply provides support for the United States's opening motion which argued

that (1) the United States has not waived sovereign immunity regarding the acts or

omissions of an independent contractor; thus, this Court lacks jurisdiction under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2672 and 1331, to hear CESI's claim;

and (2) the United States is neither negligent nor liable for Plaintiff's alleged injuries.[1]

CESI opposes the United States's opening motion on two grounds.  First, CESI

argues that the insurance and indemnification section of the contract is an improper

deviation from the Federal Acquisition Regulation ("FAR").  See CESI Opp. at 6-8.  This

is completely incorrect.  There is no deviation from the FAR.  The contract section which

requires insurance and indemnification cites two specific FAR clauses.  The contract

section CESI claims is a deviation from the FAR merely points out that the FAR clauses

---

[1] CESI's reply seems to indicate that the United States, represented by the Department of
Justice through the United States Attorney, and General Services Administration are two
separate entities in this proceeding.  As a federal agency within the Executive Branch, the
General Services Administration is the United States and the United States Attorney's
Office is its counsel.

are in other sections of the contract.  Second, CESI argues that it is entitled to a

government contractor defense.  CESI has not met the requirements of the government

contractor defense, therefore, it is inapplicable.

A.     **The Insurance Requirement In The Contract Is Not A Deviation from the Federal Acquisition Regulation.** [2]

CESI argues that the insurance requirement in Part I, Section H, Paragraph 8, of

the contract is a deviation from the Federal Acquisition Regulation ("FAR") or General

Services Acquisition Regulation ("GSAR").  See CESI Opp. at 6-8.  Based upon this

incorrect fact, CESI asserts that the agency failed to obtain the necessary approval from

"an agency head or the Head of the Contracting Activity" to include this requirement in

the contract.  See id. at 6.  CESI is mistaken.  The specific requirements in Paragraph 8 of

Section H are not deviations from the FAR or GSAR standard clauses; rather, they are

additional stand alone requirements for this contract.  GSA cites two FAR clauses in

Paragraph 8 of Part I, Section H of the Contract.  Regarding both clauses, Paragraph 8

directs the contractor to "see [the] clause" in later sections of the contract for those

requirements.  See Opening Motion at Exhibit 3 (Contract) at   47.  One of the FAR

clauses directly follows Paragraph 8, notably in Paragraph 9 of Section H, FAR Clause

52.228-5 "Insurance--Work on a Government Installation."  See id. at _49.  The second

clause mentioned in Paragraph 8 is a workers compensation clause, GSAR 552.228-70.

---

[2]  CESI's prior counsel stipulated to the contract version that the United States relies
upon in its briefing.  On May 3, 2007, during GSA Contracting Officer Mike Vrobel's
deposition, the correct version of the contract for the second option year (the option year
during which the alleged incident occurred) was entered as Exhibit 1.  This is the version
the parties agreed upon as the correct version of the contract, and it is this version that the
United States cites to in both its Opposition and in its Opening Motion.  See U.S.
Defendants' Opp. to CESI's MSJ at Exhibit 1 (Vrobel Dep.) at 5:7-22, 6:1-3.

The contractor is directed to Part II, Section I of the contract.  In Part II, Section I, GSAR

552.228-70 "Workers' Compensation Laws" is included it its entirety as is required by

the GSAR.  See id. at 66.  There was no deviation from either clause.  They were

included in Paragraph 8 of Section H to highlight the additional requirements to the

contractor and were later included in their entirety.

Regardless, for work on a Government facility, a contractor must provide and

maintain minimum amounts of insurance.  See 48 C.F.R. § 28.310 and § 52.228-5.[3]  No

approval is necessary to outline insurance requirements in a government contract.  In

special circumstances, notably for fixed priced contracts, agencies may require specific

insurance requirements.  See 48 C.F.R. § 28.306(a).[4]  Here, GSA was well within its

rights and the regulatory framework to establish increased insurance requirements for

work on the Steam Distribution Complex ("SDC").  These minimum insurance

requirements were established by GSA during the procurement for repair and

maintenance services.  See Opening Motion at Exhibit 3 (Contract) at 47.  Day and

---

[3]  48 C.F.R. § 28.310 states in pertinent part the following: "Insert the clause at 52.228-5, Insurance - Work on a Government Installation, in solicitations and contracts if a fixed-price contract is contemplated, the contract amount is expected to exceed the simplified acquisition threshold, and the contract will require work on a Government installation . . ."

48 C.F.R. § 52.228-5(a) states in pertinent part the following: "The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least in the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract."

[4] 48 C.F.R. § 28.306(a) states in pertinent part the following: "Although the Government is not ordinarily concerned with the contractor's insurance coverage if the contract is a fixed-price contract, in special circumstances agencies may specify insurance requirements under fixed-price contracts."  One special circumstance includes when Government property is involved.  See 48 C.F.R. § 28.306(a)(2).

Zimmermann ("D&Z"), CESI's predecessor to the contract, was well aware of the insurance requirements as was CESI when they took over the contract in 2004. See Opening Motion at Exhibit 2 (Novation Agreement); Exhibit 3 (Contract) at 47-48. In fact, the specific language of Clause 52.228-5 (cited as a deviation by CESI) requires that the contractor "provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or *elsewhere in the contract*." See Exhibit 3 (Contract) at 49, para. 9(A); 48 C.F.R. § 52.228-5 (emphasis added). Paragraph 8 of the contract at issue represents the minimum insurance requirements that are required *elsewhere in the contract*, which does not amount to a deviation.

**B.      The Independent Contractor Exception To The Federal Tort Claims Act Is Applicable.**

CESI also argues that since GSA maintained some responsibilities regarding the SDC, that CESI is protected from liability. See CESI Opp. at 9-11. This is an incorrect conclusion. The law is clear that simply because the Government retains certain rights and duties in a contract, such retention does not vitiate the independent contractor exception to the FTCA. The United States may enter into a contract to obtain or ensure compliance with Federal goals. However, that contractual relationship does not transform the contractor's acts into Federal acts for which liability may be imposed against the United States under the FTCA. See United States v. Orleans, 425 U.S. 807, 815-16 (1976).

Allegations that a contractor was required to comply with detailed regulations, specifications or standards in performing the work, do not establish that the United States

supervised the contractor's day-to-day operations or controlled the detailed physical

performance of the contractor's work, and do not, standing alone, vitiate the contractor

exclusion.  Logue v. United States, 412 U.S. 521, 529-30 (1971); Orleans, 425 U.S. at

817-18; Macharia v. United States, 335 F.3d 61 (D.C. Cir. 2003).  See also, Cooper, 225

F. Supp. 2d 1,  4 (D.D.C. 2002) ("[C]ourts have allowed the government extensive

flexibility in the amount of supervision it exerts over a contractor before it will deem the

contractor an agent and its acts the acts of the United States.").  Absent a showing of day-

to-day supervision or a right to control by the United States, the United States is not

liable for the torts committed by the contractor or its employees.  See also, Alexander v.

United States, 605 F.2d 828, 832 (5th Cir. 1979) (the United States' retention of the right

to: 1) approve design and specifications of any item utilized in a manufacturing process;

2) perform safety analyses of all test programs, standard operating procedures, and

equipment; 3) conduct hazard studies of all systems and equipment; and 4) discharge

contractor personnel for reasons of misconduct or security (subject to a dispute process)

did not constitute day to day supervision); Gibson v. United States, 567 F2d 1237, 1242

(3rd Cir. 1977) (United States cannot be held liable "solely because the Government

retained control over the work.").

　　　CESI fails to provide facts to support its contention that GSA acted as a day-to-

day supervisor.  Although the Government maintained its right to inspect CESI's work to

ensure contract compliance, it did not control the detailed physical performance of CESI

or supervise CESI's employees.  See Opening Motion at Exhibit 9 (Washington Dep.) at

60:5-13; Exhibit 4 (Westphal Dep.) at 104:14-17.

### C.    The Government Contractor Defense Does Not Apply

CESI relies heavily on the government contractor defense in its opposition.  See

CESI Opp. at 11-13.  This defense was first articulated in a products liability case called

Boyle v. United Technologies Corporation, 487 U.S. 500 (1988), and was extended to a

maintenance contract case in Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329 (11th

Cir. 2003).  For cases involving maintenance contracts, a contractor will not be held

liable if:  1) the United States approved reasonably precise maintenance procedures; 2)

the contractors performance conformed with those procedures; and 3) the contractor

warned the United States about the dangers in reliance on those procedures that were

known to the contractor, but not the United States.  Id. at 1335; CESI Opp. at 11.

CESI fails to meet the specific elements of the Hudgens test on multiple counts.

First, CESI has not met the threshold of establishing that the maintenance checklists in

the contract were "reasonably precise."  In Hudgens, the Army contracted with Bell

Helicopters to "maintain Army aircraft" and to "determine the airworthiness condition of

. . . the aircraft as required by applicable regulations and publications."  Hudgens, 328

F.3d at 1331.  Those applicable regulations and publications amounted to over 1000

pages of maintenance instructions.  Id. at 1336.  Clearly, the maintenance checklists

attached to the CESI contract do not compare to the "comprehensive regime" that the

Army provided to its contractor.  Id. at 1335.  The checklists broadly catalogue the

component parts of the SDC that needed to be inspected.  See Opening Motion at Exhibit

3 (Contract) at 86-95.

Second, CESI assumes that its performance conformed with the procedures

outlined in the contract.  The United States continues to maintain that since CESI was in

Manhole 42 a few days before the incident, they were in a position to see a potential

hazard and failed to warn GSA.  GSA contracted with CESI to maintain the system, one

aspect of their contractual requirements was reporting possible problems.  See Exhibit 3

(Contract) at 24; Exhibit 4 (Westphal Dep.) at 84:4-10.  CESI did not report a potential

hazard in Manhole 42 in September 2004.  Since CESI failed to do so, they did not

conform with the performance requirements of the contract and, therefore, do not meet

the second prong of the Hudgens test.

The third element of the Hudgens test requires that the contractor warn the United

States about the dangers in reliance on the procedures that were known to the contractor,

but not the United States.  Hudgens, 328 F.3d at 1335.  CESI provides no evidence to

support this element.  CESI cites no record evidence that it knew of dangers associated

with the maintenance procedures outlined in the contract, and/or warned GSA of those

dangers associated with their reliance on the maintenance procedures.  If anything, GSA

apprised CESI of the SDC's condition to ensure that CESI had a full understanding of its

contractual obligations.  See Exhibit 3 (Contract) at 84.

Finally, CESI asserts that in this case, like in Hudgens, the United States

attempted to shift blame to the contractor.  This mischaracterizes the Hudgens case.

There, the Army was not a party to the litigation.  The suit was between two private

parties and did not involve the United States, the FTCA, or the independent contractor

exception.  Thus, the Hudgens case is inapposite and, even if it were not, CESI has failed

to establish the three elements of the government contractor defense.

In addition, CESI argues that it was prevented from doing work and completing

major projects that would have enhanced the safety of the SDC.  See CESI Opp. at 13.

CESI makes this argument in an attempt to divert attention away from its basic responsibilities under the contract: (1) to tour and inspect all portions of the Steam Distribution Complex (SDC); (2) to perform all required preventive maintenance on all items within the SDC for the basic operation of equipment; and (3) to make all necessary incidental repairs and replacements as well as all necessary minor repairs and replacements that are identified by the Contractor.  See Exhibit 3 (Contract) at 22, 23 and 25.

While GSA knew the SDC's age and general condition, it did not contract with CESI for major improvements to the SDC, and such major improvements are far outside the scope of the contract.  Contracts for upgrades of the magnitude necessary to address the SDC's age would likely require Congressional authority through a prospectus.  See 40 U.S.C. § 3307.   In performance of its basic contractual duties, CESI failed to notify GSA of any problem or potential problem in Manhole 42 reasonably prior to the alleged incident.

### Conclusion

For the reasons stated herein and in its Opening Motion, the United States submits that CESI's third party complaint brought against the United States should be dismissed for lack of jurisdiction and failure to state a claim.  Alternatively, if the Court determines that it has jurisdiction, summary judgment is appropriate.

December 10, 2007                     Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney

_____/s/_____
KAREN L. MELNIK, DC BAR #436452
Assistant United States Attorney
555 Fourth Street, N.W. Civil Division
Washington, D.C. 20530
(202) 307-0338