**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATALIE T. HSIEH, et al.,

Plaintiffs,

v.

CONSOLIDATED ENGINEERING SERVICES, INC., et al.,

Defendants.

Civil Action No: 06-1218 (CKK)

**REPLY TO CESI'S AND PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**Introduction**

In accordance with the Court's Memorandum Opinion and Order, the federal defendant submitted a supplemental memorandum addressing the applicability of the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. As recognized by the Court, the federal defendant cannot be held liable to either the plaintiffs or CESI for the inspection, maintenance, and routine repairs under the independent contractor exception to the FTCA. The federal defendant's supplemental memorandum demonstrates that the discretionary function exception applies to capital improvements and major repairs by General Services Administration (GSA) to the Steam Distribution Complex (SDC).

CESI and Plaintiffs oppose the federal defendant's supplemental memorandum arguing that the discretionary function exception does not apply to the possible causes of the alleged injuries. Specifically, CESI contends that the discretionary function does not apply to: design decisions related to the SDC decisions regarding major repairs and capital improvements to the SDC; decisions regarding investigating and inspecting the SDC for water leaks; and decisions regarding warning of potentially dangerous situations. Plaintiffs contend that the discretionary function does not apply to decisions concerning routine maintenance and repairs and decisions regarding warnings of a potentially hazardous condition.

The case law cited and arguments made by CESI and the plaintiffs fail to demonstrate the discretionary function exception to the FTCA does not apply in the instant case.

## Argument

### I. The Discretionary Function Exception To The Federal Tort Claims Act Is Applicable To The Design Of The SDC.

As discussed in the federal defendant's supplemental memorandum, courts have consistently held that design determinations are protected by the discretionary function exception because they involve the exercise of policy judgments. See e.g., Terbush v. United States, 516 F.3d 1125, 1131 (9th Cir. 2008) (design of a wastewater facility was protected as a

discretionary decision), Baum v. United States, 986 F.2d 716 (4th Cir. 1993) (design of a guardrail system was protected as discretionary), Chaffin v. United States, 176 F.3d 1208 (9th Cir. 1999) (design decision related to filling in an area outside a window making it accessible to polar bears was protected as discretionary). The 1933 design of the SDC was a discretionary decision that involved multiple policy and economic considerations such as steam line placement, types of materials, available resources, the state of the art at the time of the design, and the locations to be served by the SDC. Just as the design of a guardrail system and a wastewater facility are protected as discretionary, the design of the SDC and the design of any subsequent improvements are protected under the discretionary function exception to the FTCA.

CESI points to one 1973 case, Seaboard Coast Line R.R. Co. v. United States, 473 F.2d 714 (5th Cir. 1973), asserting that the federal defendant has espoused a "misplaced statement of law." (CESI Opposition, page 8). On the contrary, it is CESI that relies on the outdated discretionary function exception analysis where the question was one of an “operational” versus a “planning activity.” In Seaboard Coastline, the Court, long before the Supreme Court initiated the two-part test for determining the applicability of the discretionary function exception, held that it was the decision to build a drainage

ditch that would be protected by the discretionary function exception but that the "operational function" of building the ditch would not be protected as discretionary. Seaboard Coast Line, 773 F.2d at 716. The two-part Gaubert test sounded the death knell to the older discretionary function cases which distinguish between “planning” decisions falling within the exception and “operational” decisions which were purportedly not covered by the exception. United States v. Gaubert, 499 U.S. 315, 326 (1991). If the nature of the decision meets the test, it is subject to the discretionary function exception, even if it could be characterized as operational, routine, or frequent. Gaubert, 499 U.S. at 334.

The design of the SDC and any subsequent redesign or major reconstruction of the system would necessarily involve balancing wide-ranging economic and policy issues, including evaluating competing national priorities, congressional authorization, possible duration of any new design or construction, the duration of the disruption of service to various agencies’ headquarters (FBI, DOJ, Smithsonian, FTC), inconvenience to the public, and possible disruption to major commuter avenues and public events (parades, protests, inaugurals). These are precisely the type of decisions protected by § 2867. 28 U.S.C. § 2867(a).

## II. **The Discretionary Function Exception To The Federal Tort Claims Act Is Applicable To Major Repairs And Capital Improvements To The SDC.**

### A. **There Is No Specific Statute, Regulation, Or Policy Mandating Major Repairs and Capital Improvements To The SDC.**

The first prong of the two-part discretionary function exception analysis requires a review of any applicable statute, regulation or policy. United States v. Gaubert, 499 U.S. 315, 322 (1991). As demonstrated in the supplemental memorandum, there is no specific statute, regulation, or policy governing major repairs and capital improvements to the SDC.[1] CESI tries to suggest that GSA's general obligations related to providing the Federal Government with an economical and efficient system for procuring and supplying property and services establishes a specific duty regarding major repairs and capital improvements to the SDC such that the first prong of the Gaubert test is not met; thus, CESI erroneously concludes that there is no protection under the discretionary function exception because there is a specific policy mandate. It is CESI’s burden to identify with specificity what mandatory statutes, rules, regulations, or directives have been violated in connection with the SDC.

---

[1] Plaintiffs note that it is undisputed that no federal statute, regulation or policy instructs on the SDC (Pl. Opp., p. 3).

Gaubert, 499 U.S. at 329-330; see also Daigle v. Shell Oil Company, 972 F.2d 1527, 1539-1540. This it has failed to do.

A general statutory duty is insufficient to satisfy the Gaubert test; the mandate must create a clear duty incumbent on a governmental actor and "give no options to the government agency." Loughlin v. United States, 286 F. Supp.2d 1, 8 (D.D.C. 2003), aff'd in part and reversed on other grounds, 393 F.3d 155 (D.C. Cir. 2004). GSA's broad authority related to the custody, management, and operation of federal property and its obligations related to providing an economical and efficient procurement and supply process do not create specific mandates on how to accomplish major repairs and capital improvements to the SDC. In contrast, there are very specific regulations related to disposal of federally owned property (41 C.F.R. § 102-75), historic preservation (41 C.F.R. § 102-78) and procurement procedures in the Federal Acquisition Regulation and General Services Acquisition Manual (48 C.F.R. § 1.000 et. seq.).

Incredibly CESI, citing to no authority, argues that the contract that it has with GSA for repair and maintenance of the SDC creates a mandatory policy under the first prong of the Gaubert test. It is unclear how a contract could ever establish a mandatory regulation or government policy. The Government's contracting decisions support policy decisions. They do not create policy. For example, in the National Capital Region

("NCR"), a lease for commercial office space to be occupied by Government tenants may have a requirement related to access to Metro-rail and other public transportation. The contract requirement would support a policy decision related to encouraging public transportation, reducing traffic, and promoting environmental protection policies. The lease does not create GSA policy. Indeed, GSA enters thousands of contracts and leases throughout the country for goods , services, office space, construction, and property management, etc. To suggest that each of these individual contracts has the status of statute, regulation or policy under Gaubert or that such contracts automatically waive the government's protection under § 2680(a) of the FTCA is meritless and has no support in law or fact.

Here, major repairs were specifically not provided for in the contract with CESI because GSA does not want independent contractors making the kinds of economic and policy decisions necessary when determining the scope, nature, cost, scheduling and completion of a major repair. Where the United States reserves rights under a contract it does so for its own benefit. This reservation does not overcome the discretionary function exception nor give rise to an actionable duty. United States v. Orleans, 425 U.S. 807, 813-814 (1976). The extent to which GSA chooses to exercise rights it has contractually reserved is inherently discretionary. Id. The decisions by necessity involve

judgment and choice and are truly “susceptible” to policy analysis. Gaubert, 499 U.S. at 325. With respect to those "major repairs" that CESI has done under a separate task order, these were decisions about when and under what circumstances the steam could, should, and would be turned off in order to accomplish the repairs. These types of decisions deal with political, economic, and policy issues of steam service to the many federal agencies employing thousands of employees, the mission (and needs) of the federal agencies and the tolerance that the federal agencies have for the disruption of steam service. The scheduling, timing, and duration of any disruption of service and possible conflicts between the needs of the customers requires balancing many factors. These are precisely the day-to-day decisions as to which there is a wide range of permissible choices and that the discretionary function exception is designed to protect from judicial second-guessing. They were properly not delegated to CESI in the contract. The “frequent” or routine nature of the decisions does not remove them from the discretionary function exception. Gaubert, 499 U.S. at 334.

**B. The Federal Defendant's Decisions Regarding Major Repairs And Capital Improvements Involved Policy Judgments.**

Since there is no mandatory statute or regulatory or policy statement regarding how and under what circumstances major repairs and capital improvements to the SDC are accomplished, the

analysis shifts to the second prong of the Gaubert test. As discussed in the supplemental memorandum, any project within the GSA Public Buildings Service ("PBS") is based on a continuing investigation and survey of the public buildings needs nationwide and the projects are distributed throughout the country with consideration given to the comparative urgency of each project. 41 C.F.R. § 102-74.140. Recently, projects such as border stations, courthouses, Federal Bureau of Investigation ("FBI") field offices, and the consolidation of the Department of Homeland Security ("DHS") are priority projects (Declaration of Diane Stolz, ¶ 12). Regionally, GSA's NCR makes the same survey of needs and a project's urgency to determine which projects to complete each year. Within the Heating Operation and Transmission Division ("HOTD"), policy decisions regarding which major repair projects and capital improvements to support are based on considerations of public safety, efficient steam distribution, and reliable steam service to the numerous Federal buildings and the missions they serve. Id. GSA's decisions and actions related to the SDC deal directly with the multiple policy considerations associated with managing and overseeing services to numerous Federal buildings.

CESI argues that the decisions GSA makes are relevant only as "property owner" and not as a "governmental body" and attempts to discredit those decisions as "ordinary maintenance decisions."

(CESI Opposition, pages 13, 14). The policy decisions and concerns associated with major repairs and capital improvements to the SDC are not ordinary maintenance decisions (Stolz Declaration). They are decisions that must balance the economic, policy, and national priorities, as well as take into account the safety to the public and thousands of federal workers in the Nation's Capitol, the necessity to supply steam to multiple federal agencies and the nature and duration of the disruption of service to those agencies. A decision concerning a capital improvement may impact or disrupt major governmental activities.[2]

Furthermore, the cases cited by CESI to support its conclusion that the decisions on major repairs and capital improvements are not subject to policy considerations but are "ordinary maintenance decisions" are distinguishable from the instant case. They are either pre-Gaubert cases and have questionable, if any, precedential value in determining whether a decision was susceptible to social, economic, or political policy concerns or they do not directly involve the FTCA. Dant v. District of Columbia, 829 F2d 69, 75 (D.C. Cir. 1987) was based on pre-Gaubert analysis and an outdated distinction between ministerial and discretionary responsibilities. McNamara v.

[2] This Court has already determined that GSA contracted with CESI for the maintenance of the steam system and, as such, GSA is shielded from liability on maintenance issues under the independent contractor exception to the discretionary function.

United States, 199 F.Supp. 879, 881 (D.D.C. 1961) is another pre-Gaubert decision where the Court limited the protection of the discretionary function exception to claims that "can be predicated on an error of judgment in determining whether to perform or not perform a function that is discretionary," not on a determination whether the decision in question itself was based on or susceptible to any policy considerations. Compare Myslakowski v. U.S., 806 F.2d 94, 97-98 (6th Cir. 1986). The explicit language of § 2680(a) states that the exception applies to "any claim based upon an act or omission." (emphasis supplied). E.Ritter & Company v. Department of the Army, 874 F2d. 1236, 1241 (8th Cir. 1989) is another pre-Gaubert decision based on the overruled operational versus planning analysis. Briggs v. Washington Metropolitan Area Transit Authority, 293 F.Supp.2d 8 (D.D.C. 2003) did not deal with an interpretation of the FTCA discretionary function exception. The holding in Newman v. United States, 248 F.Supp. 669, 671 (D.D.C. 1965), is predicated not on an analysis of whether the decision was grounded in policy, but rather, was based on the negligence of a government contractor. CESI again attempts to use an erroneous and outdated analytical framework for analyzing the discretionary function exception. Gaubert unquestionably rejected this analytical framework.

Both CESI and plaintiffs attempt to discredit the policy factors associated with GSA's major repair and capital improvement decisions by casting them in the light of decisions made as a property owner rather than as a governmental entity (CESI Opposition, p. 15; Plaintiff Opposition, p. 5). However, the United States, unlike an ordinary property owner, may be held liable only under the FTCA and only to the extent it has waived sovereign immunity. United States v. Orleans, 42 U.S. 807, 813 (1976). The United States cannot be sued where the duty of care has been delegated to an independent contractor. Cannon v. United States, 645 F.2d 1128, 1133-1139 (D.C. Cir. 1981). Additionally, the government, unlike an ordinary landowner, may not be held liable under the discretionary function exception to the FTCA, even where there is evidence of negligence. See Golden Pacific Bancorp v. Clark, 837 F.2d 509, 511 (D.C. Cir. 1998).[3] CESI, for instance, equates the major repair and capital improvement decisions of the SDC, a major system of miles of tunnels providing steam to numerous buildings and federal agencies throughout Washington, DC, to that of maintaining a tree by relying on Maalouf v. The Swiss Confederation, 208 F.Supp.2d 31 (D.D.C. 2002). The attachment of a retaining wire to a tree by a

[3] It should be noted that if the discretionary function exception applies, the cost of repairs to the SDC is immaterial. The exception applies whether the cost is ten thousand or ten million dollars. Gaubert, 499 U.S. at 334.

landowner is hardly comparable to the repair and capital investment decisions associated with the operation of the SDC, discussed supra. A private landlord is not statutorily protected by either the independent contractor exception or the discretionary function exception to the FTCA. The FTCA has not waived sovereign immunity such that state law imposing strict liability or non-delegatable duties on a landowner apply to the federal government. The operation of the SDC by GSA is simply not analogous to landscape maintenance and other tasks of a private landowner as suggested by CESI and plaintiffs. As noted previously, the routine or frequent nature of decisions or action by GSA does notremove them from the scope of the discretionary function exception. Gaubert, 499 U.S. at 334.

Further, plaintiffs attempt to characterize the federal defendant's actions with respect to any problem at Manhole 42 as that of a private landowner on the erroneous assumption that GSA had notice of a recurring problem at that manhole. There is no evidence that GSA had information of a recurring problem at Manhole 42 before September 11, 2004 (See, Deposition of Greg Westphal, p. 19-20; Deposition of Joseph Lambright, p. 44, lines 11-18; Deposition of John Bright, p. 30). But even if it did and negligently failed to act, this does not remove GSA's decisions from the scope of the exception. Id.; Hibble v. United States, 133 F.3d 915 (4th Cir. 1998) cert denied 525 U.S. 827 (1998).

Additionally, the dicta from Loughlin v. United States, 286 F.Supp.2d 1, 23 (D.D.C. 2003), aff'd in part on discretionary function and rev'd on other grounds, 393 F.3d 155 (D.C. Cir. 2004), cited by CESI is an attempt to change the required analysis to one of whether the decision sought to be protected as discretionary is a "complex and politically sensitive decision." (CESI Opposition, p. 16) This is not the test; the test is whether or not the individual decisions were grounded in public policy. Here, SDC major repair and capital improvement decisions are grounded in economic and public policy concerns (Stolz Declaration). In any event, the decision by GSA concerning funding projects, capital improvements, major repairs throughout its nationwide system are “complex and politically sensitive” decisions. Id.

**C. The Discretionary Function Exception To The Federal Tort Claims Act Is Applicable To Federal Defendant's Investigation Of Recurrent Water Infiltration Into The SDC.**

This Court has already held that GSA delegated its duty to inspect the SDC to CESI (Memorandum Opinion, p. 31-32). CESI seemingly takes this opportunity to make an end run around that decision by merging investigation of recurrent water leaks and inspection of defects, implying that this lessens its obligation to inspect and maintain the SDC. Regardless, the decisions associated with preventing or managing water leaks are protected by the discretionary function exception as it was for the

Environmental Protection Agency ("EPA") for contaminated soil in Wells v. United States, 655 F.Supp. 715 (D.D.C. 1987) and Cisco v. United States, 768 F.2d 788 (7th Cir. 1985). Similarly, GSA has discretion in deciding how to investigate and manage recurrent water leaks. Contrary to CESI's characterization, these two cases dealt with EPA's role in environmental and contamination management, not in any role it has as a regulator of individual's conduct. See Pennbank v. United States, 779 F.2d 175 (3rd Cir. 1985)(failure to inspect and discover defects in municipal sewer project concerned federal funds allocation); Rothrock v. United States, 62 F.3d 196 (7th Cir. 1995)(approval of road project required judgment based on competing policy consideration such as safety, efficiency, and cost).

**III. The Discretionary Function Exception Is Applicable to Allegations of Failure to Warn.**

Plaintiffs and CESI continue to suggest that GSA failed to warn of a hazardous condition at Manhole 42. There is insufficient evidence to suggest GSA had a reason to warn. GSA did not have any prior knowledge of a hazardous condition at Manhole 42 (See, Deposition of Greg Westphal, p. 19-20; Deposition of Joseph Lambright, p. 44, lines 11-18; Deposition of John Bright, p. 30). Because there was no notice of any hazardous condition until after this incident, there was no obligation to warn anyone about a hazardous condition at Manhole 42 in September 2004. As soon as the condition was brought to

GSA's attention, precautions were taken to prevent any other injuries; GSA instructed CESI to investigate (Deposition of Richard Matkins ("Matkins Dep."), p. 51, lines 8-15 and p. 52, lines 4-10), CESI put up a barrier around Manhole 42 (Matkins Dep., page 54, lines 4-5), and GSA issued work orders to CESI to conduct the necessary repairs (September 12, 2004 GSA Work Order).

Finally, courts have routinely held that allegations of failure to warn are well within the discretionary function exemption. See Maas v. United States, 94 F.3d 291, 297 (7th Cir. 1996)(Decisions of how and when to warn veterans of cancer risk involve policy consideration. “Deciding whether health risks justify the costs of a notification program and balancing the cost and effectiveness of a type of warning are discretionary decisions covered by § 2680(a))”). The government’s knowledge of the danger does not defeat the application of the doctrine so long as the decisions are implicitly policy driven. Rosebush v. United States, 119 F.3d 438 (6th Cir. 1997); see also Shansky v. United States, 164 F.3d 688 (1st Cir. 1999)(National Park Service’s decision regarding rehabilitation of historic steps and lack of warning signs was susceptible to policy analysis); Tippett v. United States, 108 F.3d 195 (10th Cir. 1997)(Failure to warn or abate danger of charging moose grounded in policy); Valdez v. United States, 56 F.3d 1177 (9th Cir. 1995); Chantal v.

United States, 104 F.3d 207 (8th Cir. 1997). To the extent plaintiffs and CESI suggest that the federal defendant has a duty to warn the public at large throughout much of the downtown area that there are dangers associated with its operation of the SDC, such assertions come well within the discretionary function exemption. To under take such a wide ranging warning program by necessity involves balancing the risks, the cost, and effectiveness of any warning program. Maas, 94 F.3d at 297.

## CONCLUSION

For the foregoing reasons and the reasons stated in both the Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and its Supplemental Memorandum of Points and Authorities in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment the remaining claims and cross-claims against the federal defendant should be dismissed under the independent contractor and discretionary function exceptions to the FTCA.

Respectfully submitted,

__/s/___________________________________
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

__/s/_____________________________________
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

__/s/_______________________________________
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

Of Counsel:
Elizabeth Johnson
Office of Regional Counsel
General Services Administration